IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 104,388

SANTIAGO SOLA-MORALES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When a district court considers a K.S.A. 60-1507 motion, it may: (a) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (b) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held after appointment of counsel. If the court then determines there is no substantial issue, the court may deny the motion; or (c) determine from the motion, files, records, or preliminary hearing that there is a substantial issue requiring an evidentiary hearing.

2.

When the district court denies a K.S.A. 60-1507 motion based only on the motion, files, and records after a preliminary hearing, appellate courts exercise de novo review.

3.

A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in

1

the record. If a movant satisfies that burden, the court is required to grant a hearing unless the motion is second or successive and seeks similar relief.

4.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel; the right to effective counsel encompasses the right to representation that is free from conflicts of interest.

5.

Claims for ineffective assistance of counsel under the Sixth Amendment fall into three categories. The first category arises in cases in which it is claimed that the attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category arises in situations where the defendant's attorney actively represented conflicting interests.

6.

When reviewing an attorney's alleged deficient performance, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of alleged deficiencies.

7.

When considering claims of ineffective assistance of counsel, strategic choices made after counsel's thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

8.

The United States Supreme Court recognizes three sub-categories of ineffective assistance of counsel claims based on a conflict of interest, including conflicts of interest that are rooted in an attorney's personal or financial interests.

9.

The United States Supreme Court has not defined a defendant's burden for establishing a basis to reverse a district court in a proceeding in which it is alleged the defense attorney was ineffective because of a conflict of interest that is rooted in the attorney's personal or financial interests.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 23, 2011. Appeal from Sedgwick District Court; TIMOTHY H. HENDERSON, judge. Opinion filed October 24, 2014. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, *Nola Tedesco Foulston*, former district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  Santiago Sola-Morales filed a motion for postconviction relief under K.S.A. 60-1507, alleging his trial counsel was unconstitutionally ineffective. The district court denied his motion without conducting an evidentiary hearing, and the Court of Appeals affirmed. We granted his petition for review.

3

We hold the district court erred in denying the motion without conducting an evidentiary hearing. Accordingly, we reverse the decisions of the Court of Appeals and district court and remand to the district court for such a hearing.

FACTS AND PROCEDURAL HISTORY

In April 2005, the State charged Sola-Morales with second-degree murder. The charges arose from an incident in Wichita where Frank Sibat was fatally shot in his home. After his arrest, Sola-Morales admitted he was with Sibat that night and gave law enforcement officers several inconsistent accounts of Sibat's death. Sola-Morales eventually told them he shot Sibat but maintained he had done so in self-defense. He ultimately pled not guilty.

*Pro se motion to dismiss*

After a May 6, 2005, preliminary hearing and arraignment, the district court initially set trial for June 27, but the case was continued. According to later statements made by Sola-Morales' counsel appointed to represent him at the January 2010 hearing on his 1507 motion, Sola-Morales believed his trial was being delayed unreasonably and several times asked his trial counsel, "What's going on? Why is this taking so long? I thought I had a right to speedy trial?" Per his 1507 counsel's repeating Sola-Morales' version, "His [trial] counsel says, . . . 'the State keeps asking for continuances, and the Court keeps granting them.'" His 1507 counsel explained to the court that Sola-Morales therefore understood the State had asked for those continuances. In Sola-Morales' affidavit attached to his 1507 motion he swore, "That based upon my knowledge and belief, I state that my court appointed attorney told me that the continuances that were taken in my case were taken by the state." According to his 1507 counsel, "So Mr. Sola-

4

Morales files his own Motion to Dismiss the case, and says let's get rid of this case because it's not progressing appropriately."

On February 21, 2006, Sola-Morales indeed had filed a pro se motion to dismiss—nearly 8 months after the initial trial setting. He alleged the State had violated his statutory speedy trial rights by failing to bring his case to trial within 90 days without cause.

In Sola-Morales' motion, he specifically alleged he had been incarcerated for 313 days, and the State had requested three trial continuances. But in its March 2, 2006, response, the State contended defense counsel had requested six continuances and it had requested none. So it opposed dismissal on speedy trial grounds, arguing the delay should be charged to Sola-Morales. The response's certificate of service shows a copy was sent to Sola-Morales' trial counsel. The record on appeal does not disclose a copy of the response was ever provided—from any source—to Sola-Morales.

The district court scheduled a March 10, 2006, hearing on Sola-Morales' pro se motion to dismiss. But at the 2010 hearing on Sola-Morales' 1507 motion, his 1507 counsel and the prosecutor both agreed his trial counsel had withdrawn the motion. There is no record of a 2006 hearing about the motion. Nor is there an order or journal entry of disposition in the record on appeal. The only documentary evidence concerning the motion's disposition is an entry on the district court's record of action for activities occurring on March 10, 2006—and it states "withdrawn."

According to Sola-Morales' 1507 counsel at the 2010 hearing, his trial counsel's continuances were obtained without his client's knowledge. His 1507 counsel argued the withdrawal of Sola-Morales' motion to dismiss also was accomplished without Sola-Morales' knowledge, much less his consent. Indeed, Sola-Morales' affidavit in support of

5

his 1507 motion states that on the day scheduled for his hearing on his pro se motion to dismiss he was never taken to court for the hearing. Rather, he swears "my attorney told me that 'the court dismissed my motion.'" In other words, he was not told the motion had been voluntarily withdrawn by his counsel.

*Trial*

Trial began 18 days after disposition of Sola-Morales' pro se motion to dismiss: March 28, 2006. There, the State presented testimony from Pedro Medina. Pertinent to Sola-Morales' issue in the current appeal, Medina testified he worked with Sola-Morales and Sola-Morales told him he had fought and killed a person. Medina testified generally about Sola-Morales' description of the incident and that Sola-Morales was drunk at work the day after the incident. According to Medina, Vladimir Martinez was also present during part of this conversation. Although defense counsel subpoenaed Martinez, he never testified.

Before Sola-Morales' case-in-chief, his counsel asked the district court to permit testimony from Stephen Peterson about the violent tendencies of the decedent Sibat. The court accepted the proffer that Peterson would testify about specific instances of Sibat's prior violent conduct. During his proffer, defense counsel told the court he knew opinion and reputation testimony about Sibat's propensity for violence was admissible. But emphasized he was particularly seeking admission of testimony about specific instances of violence.

During trial, the court ruled that Peterson's anticipated testimony about specific instances of violence was inadmissible. Although the court implied it would admit opinion or reputation testimony about Sibat's propensity for violence, it did not explicitly address that issue. Sola-Morales' trial counsel never called Peterson as a witness to offer

6

such testimony. According to Sola-Morales' affidavit attached to his later 1507 motion, if Peterson were called as a witness he would have testified about Sibat's reputation as being a "mean drunk" and his "reputation in the community for violence."

Germane to the other issue on appeal, the district court ultimately instructed the jury on second-degree murder, voluntary manslaughter, and on the version of involuntary manslaughter requiring an unintentional killing during the commission of a lawful act in an unlawful manner. The jury convicted Sola-Morales of voluntary manslaughter, and the court sentenced him to 216 months' imprisonment. The Court of Appeals affirmed on direct appeal, and we denied his petition for review. See *State v. Sola-Morales*, No. 97,011, 2008 WL 2510154 (Kan. App. 2008) (unpublished opinion), *rev. denied* 287 Kan. 769 (2009).

### *Motion under K.S.A. 60-1507*

Sola-Morales then filed the present pro se 1507 motion for postconviction relief. Although the initial motion raised multiple issues, the only issue before this court is his allegation that his trial counsel was ineffective in violation of the Sixth Amendment to the United States Constitution. More specifically, Sola-Morales claims his counsel was ineffective in three distinct ways: (1) by failing to object to the allegedly incomplete involuntary manslaughter instruction, (2) by failing to adequately investigate and elicit essential trial testimony from Martinez and Peterson, and (3) by failing to be honest with Sola-Morales, *e.g.*, about who had requested the pretrial continuances, which effectively denied his statutory right to a speedy trial.

As noted, the district court held a preliminary hearing on the 1507 motion in January 2010 where Sola-Morales was represented by different court-appointed counsel. But he did not appear personally, and no additional evidence was taken.

7

After oral argument, the court denied the motion, adopted the State's response, and instructed the State to prepare a journal entry. That journal entry states Sola-Morales failed to show that deficient performance by his counsel caused him prejudice to support any of his three allegations of ineffective assistance of counsel. As for the speedy trial issue in particular, the court ruled that trial continuances can be requested unilaterally by counsel, citing *State v. Bafford*, 255 Kan. 888, 895, 879 P.2d 613 (1994) ("[T]he decision of whether to move for a continuance 'does not require a specific consultation between the attorney and client.'").

*Court of Appeals*

A panel of the Court of Appeals affirmed the district court's denial of 1507 relief. See *Sola-Morales v. State*, No. 104,388, 2011 WL 4440414 (Kan. App. 2011) (unpublished opinion). We granted Sola-Morales' petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue: *The district court erred by denying Sola-Morales' K.S.A. 60-1507 motion without conducting an evidentiary hearing.*

Sola-Morales argues the district court erred in failing to hold a full evidentiary hearing. The State responds the court correctly denied the motion after the preliminary hearing because, as the court's journal entry stated, "the motion, files, and records conclusively show movant is not entitled to the relief requested."

8

*Standard of review*

We have held that when considering a 60-1507 motion, a district court has three options:

> "(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing." *Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013).

Our standard of review depends upon which approach the district court used to dispose of the motion. When, as here, a court denies a 60-1507 motion based only on the motion, files, and records after a preliminary hearing, we are in as good a position as that court to consider the merits. So we exercise de novo review. *Barr v. State*, 287 Kan. 190, 196, 196 P.3d 357 (2008) (citing *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 [2007]).

*Discussion*

We begin our review of Sola-Morales' claims by acknowledging his burden. "A movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011). Once a movant satisfies that burden, we are "required to grant a hearing, unless the motion is 'second' or 'successive' and seeks similar relief." 292 Kan. at 274 (quoting *Holt v. State*, 290 Kan.

9

491, 495, 232 P.3d 848 [2010]). Because Sola-Morales' 60-1507 motion is based on the purported ineffectiveness of his trial counsel, the substantive guarantees of effective counsel control whether he is entitled to an evidentiary hearing.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is applicable to state proceedings under the Fourteenth Amendment. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). This guarantee includes the right to more than the mere presence of counsel but also the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). We have acknowledged that "[t]he purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.'" *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689).

We have interpreted United States Supreme Court caselaw as distinguishing among three categories of ineffective assistance of counsel claims:

> "The first category includes cases in which it is claimed that the attorney's performance was so deficient that the defendant was denied a fair trial. The second category applies when the assistance of counsel was denied entirely or denied at a critical stage of the proceeding. The third category includes situations where the defendant's attorney 'actively represented conflicting interests.'" *Galaviz*, 296 Kan. at 181 (quoting *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074, 122 S. Ct. 1954, 152 L. Ed. 2d 856 [2002]).

10

Claims of ineffective assistance of counsel for deficient performance under the first category are the "general rule" and controlled by *Strickland. Galaviz*, 296 Kan. at 181 (citing *Mickens*, 535 U.S. at 166). To prevail on such a claim, a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *State v. Bledsoe*, 283 Kan. 81, 90, 150 P.3d 868 (2007); see *Strickland*, 466 U.S. at 687.

The second category of claims falls under an exception to the general rule known as the *Cronic* exception. It applies only when a defendant is completely denied the assistance of counsel or denied counsel "at a critical stage of a proceeding." *Galaviz*, 296 Kan. at 181 (citing *United States v. Cronic*, 466 U.S. 648, 658-59, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)]). Under these circumstances, a court may presume the defendant was prejudiced, *i.e.*, he or she is "spared . . . the need of showing probable effect upon the outcome." 296 Kan. at 181 (quoting *Mickens*, 535 U.S. at 166); see *State v. Stovall*, 298 Kan. 362, 375, 312 P.3d 1271 (2013). The parties apparently concede, and we agree, the *Cronic* exception does not apply in this case.

The third category of claims involves attorney conflicts of interest. The right to counsel extends a duty of loyalty from counsel to the client so "[a] defendant in a criminal trial must have '"representation that is free from conflicts of interest."' [Citations omitted.]" *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). To prevail on such a claim, the defendant must first establish his or her attorney '"actively represented conflicting interests.'" *Galaviz*, 296 Kan. at 181 (quoting *Mickens*, 535 U.S. at 166). Beyond this starting point, the type of alleged conflict dictates what the defendant must additionally establish to prevail. The United States Supreme Court has recognized three subcategories of conflict of interest claims: (1) the automatic reversal exception, (2) the

11

adverse effect exception, and (3) what we have labeled the "*Mickens* reservation." See 296 Kan. at 181-85 (discussing the three *Mickens* subcategories).

The first subcategory of conflict of interest claims, *i.e.*, the automatic reversal exception, is relevant only in cases of "multiple concurrent representation," which is when defense counsel "is simultaneously representing codefendants with antagonistic interests in the same proceeding." *Stovall*, 298 Kan. at 376 (citing *Galaviz*, 296 Kan. at 183). This exception additionally requires an objection to the representations before or during the proceedings and also a failure of the district court to inquire and determine there is no conflict. *Galaviz*, 296 Kan. at 183. Under this exception, as with the *Cronic* exception, reversal is automatic—unless the district court determines there is no conflict of interest. 296 Kan. at 183; see *State v. Gleason*, 277 Kan. 624, 650, 88 P.3d 218 (2004).

While the second subcategory, *i.e.*, the adverse effect exception, also requires an attorney conflict of interest through concurrent representation of codefendants, it is dissimilar from the automatic reversal exception because it arises when no objection to the conflict is lodged before or during the proceedings. *Stovall*, 298 Kan. at 376 (citing *Galaviz*, 296 Kan. at 183). And under this particular exception, "'a defendant must demonstrate that "a conflict of interest *actually affected* the adequacy of his representation."'" (Emphasis added.) *Galaviz*, 296 Kan. at 183 (citing *Mickens*, 535 U.S. at 168); see *Gleason*, 277 Kan. at 650. This standard is lower than *Strickland*'s, which imposes a burden on defendant to show actual prejudice by the attorney's performance, *i.e.*, "probable effect upon the outcome of the trial." 296 Kan. at 184 (citing *Mickens*, 535 U.S. at 174).

The third subcategory, *i.e.*, the *Mickens* reservation, is relevant where a conflict is "'rooted in counsel's obligations to *former* clients'" or "'counsel's personal or financial interests.'" *Galaviz*, 296 Kan. at 184 (quoting *Mickens*, 535 U.S. at 174). We have

12

referred to this subcategory as the *Mickens* reservation because the Supreme Court did not articulate what additional burden, *e.g.*, prejudice or adverse effect, a defendant must satisfy before receiving relief based on such conflicts of interest. *Mickens*, 535 U.S. at 176; 296 Kan. at 184-86; see *State v. Cheatham*, 296 Kan. 417, 449-50, 292 P.3d 318 (2013).

Against this backdrop, we now address the three distinct instances of ineffective counsel alleged by Sola-Morales.

### (1) *Failure to object to the involuntary manslaughter instruction*

Sola-Morales first argues his trial counsel was unconstitutionally ineffective because counsel failed to object to the district court's alleged erroneous involuntary manslaughter instruction. Sola-Morales' contention falls in the deficient performance category, and therefore, we analyze it under *Strickland*. See, *e.g.*, *Gleason*, 277 Kan. at 643-49 (allegation of deficient trial performance due to failure to object analyzed under *Strickland*). So to eventually prevail on his motion, Sola-Morales must establish (1) his trial counsel's failure to object to the instruction constitutes deficient performance under the totality of the circumstances, and (2) prejudice, *i.e.*, there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Bledsoe*, 283 Kan. at 90.

This means that to warrant an evidentiary hearing so Sola-Morales has an opportunity to meet this standard, he must first state some evidentiary basis in support of his motion or an evidentiary basis must appear in the record. *Holmes*, 292 Kan. at 274. But no evidentiary hearing is warranted if the court can conclusively determine from the motion, files, and records that he is not entitled to relief.

13

Specifically, Sola-Morales contends his counsel should have objected to the deletion of the reckless alternative in the proposed involuntary manslaughter instruction. The State responds that the Court of Appeals correctly held that he was not prejudiced by the lack of this variant on the given instruction because the jury never would have considered it, *i.e.*, it "never came into play." *Sola-Morales*, 2011 WL 4440414, at *2.

Sola-Morales' trial counsel submitted a proposed jury instruction for involuntary manslaughter providing the jury could find Sola-Morales guilty of that offense only if the State proved he unintentionally killed the victim (1) recklessly or (2) during the commission of a lawful act in an unlawful manner. The district court suggested the trial evidence did not support an instruction involving recklessness. Defense counsel agreed, and the court gave the following involuntary manslaughter instruction without the reckless alternative:

"If you do not agree that the defendant is guilty of murder in the second degree or voluntary manslaughter, you should then consider the lesser included offense of involuntary manslaughter.

"To establish this charge, each of the following claims must be proved:

"1.     That the defendant unintentionally killed Frank F. Sibat;

"2.     *That it was done during the commission of a lawful act in an unlawful manner*, and

"3.     That this act occurred on or about the 30th day of March, 2005, in Sedgwick County, Kansas." (Emphasis added.)

The State focuses its argument on the second prong of the *Strickland* test, *i.e.*, there is no prejudice caused by trial counsel's deficiencies. We will focus there also. See

14

*Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012) (citing *Strickland*, 466 U.S. at 697) (court may first consider prejudice prong of ineffective assistance of counsel inquiry).

The given instruction begins with a transitional statement that offers an orderly method by which the jury can consider possible verdicts. See *State v. Lawrence*, 281 Kan. 1081, 1091, 135 P.3d 1211 (2006). That provision instructed the jury to consider involuntary manslaughter only if it did not agree the defendant is guilty of second-degree murder or voluntary manslaughter. The jury found Sola-Morales guilty of voluntary manslaughter, meaning it never considered the allegedly incomplete instruction for the lesser offense of involuntary manslaughter. See *State v. Tague*, 296 Kan. 993, 1008, 298 P.3d 273 (2013) (jury presumed to follow instructions). So Sola-Morales could not have suffered prejudice from his counsel's failure to object to the lesser offense instruction given to the jury.

Sola-Morales claims this conclusion does not end our inquiry because the jury should be permitted to consider all of the instructions together. But that argument is contrary to our well-established precedent regarding transitional statements in jury instructions. See *State v. Adams*, 292 Kan. 60, 75-78, 253 P.3d 5 (2011) (approving transitional statements). Sola-Morales has given us no reason to revisit the use of transitional statements, and we decline to do so.

In short, there is no need for an evidentiary hearing to develop new facts because we can conclusively determine from the motion, files, and records—and arguments of counsel at the 1507 preliminary hearing—that Sola-Morales is not entitled to relief. So we affirm the district court's denial of his motion without an evidentiary hearing on this issue.

(2) *Failure to conduct an adequate pretrial investigation and elicit essential testimony*

Sola-Morales next argues his trial counsel was unconstitutionally ineffective for failing to elicit (1) testimony from Martinez to impeach Medina, and (2) opinion or reputation testimony from Peterson regarding decedent Sibat's violent tendencies. Sola-Morales claims this ineffectiveness resulted from his counsel's failure to adequately investigate and interview both witnesses before trial. The State responds these omissions represent counsel's strategic decisions, which are virtually unassailable.

This issue fits under the deficient performance category and also must be analyzed under *Strickland*, requiring a defendant to show deficient performance and resultant prejudice. See, *e.g.*, *Gleason*, 277 Kan. at 643-49 (allegation of failure to prepare for trial analyzed under *Strickland*). As with the involuntary manslaughter instruction previously analyzed, no evidentiary hearing is warranted if the court, from the motion, files, and records, can conclusively determine Sola-Morales is not entitled to relief.

Turning first to the State's argument, the State is correct that generally "[i]t is within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions." *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011) (citing *State v. Ward*, 227 Kan. 663, Syl. ¶ 1, 608 P.2d 1351 [1980]); see also *Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

But "'[m]ere invocation of the word "strategy" does not insulate the performance of a criminal defendant's lawyer from constitutional criticism,' especially 'when counsel lacks the information to make an informed decision due to inadequacies of his or her investigation.'" *State v. Gonzales*, 289 Kan. 351, 358, 212 P.3d 215 (2009) (quoting

*Wilkins v. State*, 286 Kan. 971, 982, 190 P.3d 957 [2008]). So where counsel lacks the information to make an appropriate decision on these matters due to lack of investigation, "'any argument of "trial strategy" is inappropriate.'" *Thompson*, 293 Kan. at 716 (quoting *Mullins v. State*, 30 Kan. App. 2d 711, 716-17, 46 P.3d 1222 [2002]). Consistent with *Strickland*'s burden on a defendant to establish deficient performance, the defendant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy. *Gleason*, 277 Kan. at 644 (citing *Ferguson v. State*, 276 Kan. 428, 446, 78 P.3d 40 [2003]).

Although the State emphasizes our generally deferential review of strategic decisions after a thorough investigation, Sola-Morales argues his counsel's decisions were deficient precisely because of a failure to adequately investigate. And Sola-Morales specifically contends this deficient performance claim cannot be adequately analyzed without an evidentiary hearing.

Regarding Sola-Morales' claim his counsel failed to interview Martinez or call him to testify, both lower courts concluded Sola-Morales did not show how this failure caused prejudice. As to Peterson, the Court of Appeals concluded the failure to elicit his testimony was insufficient to undermine the trial's fundamental fairness. So it affirmed the district court's rejection of Sola-Morales' argument about Peterson's testimony even though that court had relied on an erroneous rationale, *i.e.*, that the issue had already been decided on direct appeal. *Sola-Morales*, 2011 WL 4440414, at *3-4 (citing *State v. Murray*, 285 Kan. 503, 533, 174 P.3d 407 [2008]).

Because both lower courts essentially relied on the lack of prejudice under *Strickland* to deny Sola-Morales' claim, we will again first address this "second prong." See *Edgar*, 294 Kan. at 843. At trial, Sola-Morales relied on a theory of self-defense, with his counsel conceding a shot fired by Sola-Morales killed Sibat. Given this

17

admission, it is particularly important for defense counsel to present evidence, if any, to justify the defendant's actions. See *State v. King*, 293 Kan. 1057, 1063, 274 P.3d 599 (2012) (evidence integral to defendant's theory of self-defense essential for a fair trial).

According to Sola-Morales, Martinez—the father of Sola-Morales' common law wife—would have testified that Medina had never spoken to Sola-Morales. Accordingly, Martinez would have refuted Medina's testimony that Sola-Morales was drunk at work the day after the incident, and they had a short conversation. Martinez additionally would have refuted that Medina was also present during part of this conversation and that Sola-Morales said he had fought and killed a person.

Sola-Morales argues Martinez' testimony would have cast doubt on Medina's testimony. But after reviewing the evidence, including that cited by the lower courts, we agree with them that Sola-Martinez could not show sufficient prejudice under *Strickland* to establish a reasonable probability the jury would have reached a different result had Martinez so testified.

Medina's testimony was consistent with the story Sola-Morales himself provided during a police interview. Sola-Morales did not testify or otherwise ever recant this information or suggest it was inaccurate. To the contrary, his theory was self-defense, and thus he admitted he and Sibat had been in a fight that resulted in Sibat's death. In his police statement Sola-Morales admitted, and his counsel later conceded at trial, that Sola-Morales had fired the fatal shot. At best, Martinez simply would have eliminated Medina's corroboration of these important admissions already made by the defense. *Cf. City of Wichita v. Sealpak Co., Inc.*, 279 Kan. 799, 802, 112 P.3d 125 (2005) ("'Admissions against interest made by a party are the strongest kind of evidence and override other factors.'"). Accordingly, any alleged trial counsel failures to have Martinez

18

testify would not undermine the essential fairness of the trial. See *Strickland*, 466 U.S. at 689.

As for Peterson's testimony, although as proffered it was rejected as providing specific instances of Sibat's prior violence, the court did not deny that Peterson could testify to Sibat's violent reputation. The Court of Appeals held defense counsel's failure to call Peterson to so testify did not meet *Strickland*'s prejudice prong because the trial evidence showing "the victim was unarmed; he was badly beaten; and he was then fatally shot" was "wholly inconsistent with a claim of self-defense." *Sola-Morales*, 2011 WL 4440414, at *4.

These specific facts must be considered with other facts in the record, however. For example, Medina and another witness testified that Sola-Morales' face was scratched the next day. Additionally, the responding officer testified that he saw a lamp on the floor with its shade smashed, a large aquarium near Sibat's body was off-balance with some water spilled out, and the scene was consistent with a scuffle. Finally, a crime scene investigator testified a coffee table was skewed or dislocated.

Moreover, according to the testimony of a police investigator, Sola-Morales eventually told police that when he tried to leave Sibat's house, Sibat pulled a gun on him and they were wrestling over the gun when it went off. The gun was never located, and nothing in the record indicates the owner of the gun.

Unlike the panel, from this record we cannot hold that "[w]hatever limited weight reputation evidence about the victim might have had, it would not have changed the essential nature of that evidence[, *e.g.*, the bad beating,] or the jury's verdict based upon that evidence." *Sola-Morales*, 2011 WL 4440414, at *4. Simply put, too much of this evidence could just as well support Sibat as the aggressor, at least initially, which would

19

support Sola-Morales' claim of self-defense. See *State v. Jordan*, 250 Kan. 180, 184, 825 P.2d 157 (1992) (defendant entitled to raise self-defense where there is evidence of physical aggression on part of victim).

In short, at this stage, we are not satisfied the motion, files, and records conclusively show Peterson's testimony would not have changed the jury's verdict. See *Strickland*, 466 U.S. at 687 (defendant must establish there is a reasonable probability the jury would have reached a different result absent the deficient performance). Consequently, an evidentiary hearing is necessary so the district court can inquire more particularly about the content of Peterson's anticipated testimony and consider whether it would have caused the jury to reach a different verdict.

Because the evidentiary hearing may uncover *Strickland*-defined prejudice to Sola-Morales due to the content of Peterson's testimony, the district court may also need to determine in that hearing whether counsel's performance was deficient under *Strickland*'s first prong. Both lower courts decided Sola-Morales is not entitled to relief without hearing any evidence about the adequacy of his counsel's pretrial investigation— a potentially crucial factor in analyzing whether his claims merit relief. See *Holmes*, 292 Kan. at 281 (nothing in record to indicate videotape and transcript's absence from record on appeal was due to appellate counsel's strategy or instead due to his error; "[l]ack of strategic choice is a further step for Holmes to make in establishing his ineffective assistance of appellate counsel claim").

Accordingly, we reverse the district court and Court of Appeals and remand to the district court for an evidentiary hearing regarding the content of Peterson's anticipated testimony about Sibat's reputation for violence and potentially the alleged failure of Sola-Morales' trial counsel to adequately investigate and pursue this issue.

Although already remanding the case to the district court on the Peterson issue, we address Sola-Morales' remaining claim of ineffective assistance of counsel should it have any merit and need to be the subject of the evidentiary hearing as well.

(3) *Failure to be honest with Sola-Morales about continuances*

For Sola-Morales' last contention, he basically argues his trial counsel was unconstitutionally ineffective because counsel was dishonest with him. For example, Sola-Morales contends his counsel requested and received numerous trial continuances without consulting him. He alleges counsel then falsely told him the State caused the pretrial delay, leading Sola-Morales to file a pro se motion to dismiss the criminal charges on speedy trial grounds.

At oral argument before this court, Sola-Morales' court-appointed appellate counsel clarified his contention. Specifically, trial counsel's conduct demonstrated a conflict of interest that caused a breakdown in the attorney-client relationship, effectively relieving Sola-Morales of his *Strickland* burden to prove deficient performance caused him prejudice.

The State argues that although the lower courts expressed some concern about the delay before trial, they properly concluded this particular allegation fails to justify an evidentiary hearing under *Strickland*'s test. The State specifically contends that, even accepting Sola-Morales' allegations as true, he is unable to show the requisite prejudice under the second prong. But the State does not directly address Sola-Morales' arguments under his clarified conflict of interest theory.

Despite Sola-Morales' assertion that the unilateral pretrial continuances and alleged dishonesty of his trial counsel involved a conflict of interest, he failed to specify

21

the precise conflict of interest subcategory he relies on for this claim. But because there is no evidence of concurrent multiple representations of clients, by default his allegations necessarily constitute a claim of ineffective assistance of counsel under the *Mickens* reservation. In other words, he argues a claim of a conflict "'rooted in . . . "counsel's personal or financial interests."' [Citations omitted.]" *State v. Bowen*, 299 Kan. at 347.

At the outset of our analysis, it is helpful to examine Sola-Morales' specific contentions as stated in his petition for review granted by this court:

> "Mr. Sola-Morales stated he was told by trial counsel that the State had taken the continuances in his case. The district court found that defense counsel had the right to get continuances without the permission of the defendant and that the defendant failed to show how he was prejudiced by the delay. *This finding by the court, again, totally misses the point of the argument.* Mr. Sola-Morales relied on his attorney for information. According to Mr. Sola-Morales, his counsel gave him false information; information upon which Mr. Sola-Morales relied in filing his motion to dismiss. An evidentiary hearing was necessary to discern whether or not counsel lied to Mr. Sola-Morales regarding the many delays in his case. *If counsel was untruthful with Mr. Sola-Morales, then the entire case and defense presented on Mr. Sola-Morales' behalf by counsel comes into question.*" (Emphasis added.)

The petition for review argues the panel's similar holding also "missed the point." It continues:

> "[A]s noted above, the issue was whether or not counsel was being truthful with Mr. Sola-Morales. Mr. Sola-Morales believed that his speedy trial time had run because counsel had told him that the State had taken the continuances. *If trial counsel was lying to Mr. Sola-Morales, then Mr. Sola-Morales was prejudiced by having counsel engaged who was not representing Mr. Sola-Morales' best interests and was preventing Mr. Sola-Morales from participating in his own defense."* (Emphasis added.)

22

It is unclear what facts were known to any one person in the spring of 2006 around the time Sola-Morales' motion to dismiss was on file. So we begin by establishing what was known to the court at the January 2010 hearing on Sola-Morales' pro se 1507 motion.

There, Sola-Morales' 1507 counsel informed the court that trial counsel had responded to his client's speedy trial complaints with a lie. Specifically, the repeated trial continuances keeping him in jail for more than 300 days were at the State's request. Sola-Morales relied upon the lie by using it as his factual basis to support his pro se motion to dismiss the charges on speedy trial grounds. His 1507 counsel also informed the court that Sola-Morales obviously had never been consulted about, nor given consent to, his trial counsel requesting continuances. Sola-Morales' affidavit attached to his 1507 motion—the subject of the entire court hearing—essentially corroborated this information. He swore, "That based upon my knowledge and belief . . . my court appointed attorney told me that the continuances that were taken in my case were taken by the state."

Additionally, Sola-Morales' 1507 counsel and the prosecutor both told the court that his trial counsel had withdrawn Sola-Morales' pro se motion—apparently soon after receiving the State's response blaming him for the trial continuances. The district court's 2006 record of action, also available to the 2010 court, appeared to confirm counsel's withdrawal of the motion with its entry of March 10 simply showing that the motion was "withdrawn."

Moreover, his 1507 counsel informed the court that this withdrawal by trial counsel of Sola-Morales' own motion to dismiss, like counsel's requests for trial continuances, also had been done without Sola-Morales' knowledge or consent. Indeed, Sola-Morales' affidavit not only supports this accusation but also essentially attributes a

23

second lie to his trial counsel. Specifically, Sola-Morales swore his counsel told him the "court dismissed my [pro se] motion," *i.e.*, he was not told the motion had been voluntarily withdrawn by his counsel.

Given these facts made available to the district court, we turn to what more, if anything, the court could have done with them. Sola-Morales essentially contends the court was presented with a breach of the duty of loyalty that trial counsel owed to him as client. We observe the *Strickland* court held: "Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes a duty of loyalty, a duty to avoid conflicts of interest." *Strickland*, 466 U.S. at 688; accord *Bowen*, 299 Kan at 342 ("The right [to counsel] extends a duty of loyalty [from counsel] to the client."). Indeed, the *Strickland* Court described the duty of loyalty as "perhaps the most basic of counsel's duties." 466 U.S. at 692.

As we recently affirmed, "[a] district court's duty to inquire into a potential attorney-client conflict emanates from its responsibility to assure that a defendant's constitutional right to effective assistance of counsel is honored." *State v. Brown*, 300 Kan. ___, 331 P.3d 797, 808 (2014). Furthermore, "[t]he duty to inquire accrues when the court first learns of the *potential* conflict." (Emphasis added.) 331 P.3d at 808. So we now proceed to determine if the 1507 court's duty to inquire was triggered, *e.g.*, by the allegations of Sola-Morales' trial counsel's lying to his client and allegations of his counsel's unilateral trial continuances and unilateral withdrawal of his client's pro se motion to dismiss.

We begin by recognizing this court has held it is unethical for an attorney to lie to his or her client—or to the court and opposing counsel. See *In Re Gershater*, 256 Kan. 512, 517, 886 P.2d 343 (1994). In concluding the attorney deserved discipline for lying to her client, the *Gershater* court relied upon Kansas Rules of Professional Conduct (KRPC)

24

Rule 8.4(c) (2013 Kan. Ct. R. Annot. 655), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and KRPC 8.4(d), which prohibits engaging in conduct that is prejudicial to the administration of justice. While an ethical violation does not automatically constitute grounds for an attorney's deficient performance or conflict of interest, the United States Supreme Court has held it may be considered in the calculus. *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) (quoting *Strickland*, 466 U.S. at 688) ("*Strickland* mandates that '[p]revailing norms of practice as reflected in American Bar Association Standards and the like, . . . are guides to determining what is reasonable, but they are only guides.'").

This information made available to the district court in 2010 also appears to raise other ethical considerations affecting the attorney-client relationship. Specifically, if the pro se motion to dismiss was based upon a lie that trial counsel told Sola-Morales, counsel may have faced divided loyalties once he learned of the motion's existence and its contents. In other words, he could either admit to the court and the prosecution that his lie to his client was the foundation for the motion, or he could simply withdraw the motion before his involvement in the lie could be discovered by them.

Toward that end, we have held "[t]he Kansas Rules of Professional Conduct prohibit a conflict of interest, precluding a lawyer from representing a client, *where the representation may be materially limited by the lawyer's own interests*. KRPC Rule 1.7(b) (2005 Kan. Ct. R. Annot. 407)." (Emphasis added.) *State v. McGee*, 280 Kan. 890, 896, 126 P.3d 1110 (2006); see also KRPC 1.7(b), Cmt. 10 (2013 Kan. Ct. R. Annot. 519) ("The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.").

25

In an analogous situation to the instant case, the *McGee* court analyzed defendant's pro se motion for new trial counsel, alleging a conflict of interest. After reviewing the transcript of the hearing where both McGee and his counsel testified and citing KRPC 1.7(b), we ruled the disputed facts did not rise to the level of a conflict of interest which would meet the requirement of "justifiable dissatisfaction" with counsel to warrant appointment of new counsel. Trial counsel's contradiction of McGee's "facts did not compromise any confidential information, concede McGee's guilt, *or establish that McGee's counsel had any interest that materially limited his representation of McGee."* (Emphasis added.) 280 Kan. at 896. Here, of course, neither Sola-Morales nor his trial counsel were allowed to testify at the nonevidentiary hearing on the 1507 motion. This testimony might have aided the court had it analyzed the facts for a conflict of interest and then needed to determine whether counsel's representation of his client was limited by his own interest.

Trial counsel's withdrawal of Sola-Morales' motion to dismiss—allegedly without his client's knowledge or consent—may also suggest a chosen path of self-interest when faced with divided loyalties:  Tell the client the truth, or hide the truth by withdrawal of the client's motion that is based upon counsel's lie. The same suggestion of self-interest arguably can be made about counsel's alleged decision to tell Sola-Morales the court essentially was to blame by "dismissing" the motion. A court dismissal implies the issue of denial of speedy trial rights was irrevocably closed. His purported second lie further reduces the chances that an ethics complaint or a motion for substitute counsel per *McGee* will be filed for his alleged first lie. In short, counsel may have sought to avoid disclosure of his purported lie by more lies—placing his own interests over his client's.

The rationale underlying KRPC 1.7 discussed in *McGee* is well-illustrated in a case cited by this court in *State v. Cheatham*, 296 Kan. 417, 292 P.3d 318 (2013), where we stated: "'An actual conflict of interest exists if "the defense attorney was required to

26

make a choice advancing his own interests to the detriment of his client's interests."'" 296 Kan. at 452 (quoting *Stoia v. United States*, 22 F.3d 766, 771 [7th Cir. 1994]).

*Stoia* contains some parallels to the instant case. There, the defendant filed a habeas petition alleging he was denied effective assistance of counsel because one of his defense attorneys had been burdened by an actual conflict of interest. The Seventh Circuit relied upon its caselaw providing that a conflict existed "where there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation." *Stoia*, 22 F.3d at 771 (citing *United States v. Balzano*, 916 F.2d 1273, 1293 [7th Cir. 1990]).

The *Stoia* court also relied upon *Solina v. United States*, 709 F.2d 160, 164 (2d Cir. 1983) (conflict of interest when an attorney was in a position where he was required to choose between his own interest in not being discovered as an unlicensed lawyer and the defendant's interest in receiving a vigorous defense), and *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984) (conflict of interest when attorney allegedly had engaged in criminal conduct related to that for which the defendant client was standing trial).

The Seventh Circuit in *Stoia* held that if the defense attorney had reason to be concerned that the United States' attorney would learn counsel was representing criminal defendants like Stoia in violation of his plea agreement with that prosecutor, he "would undoubtedly have an actual conflict of interest." *Stoia*, 22 F.3d at 772. The court analogized his situation to the attorneys in *Solina* and *Cancilla*: Conduct an unimpeded defense of Stoia and run the risk that the authorities would discover his apparent plea agreement violation or sacrifice Stoia's defense in hopes that his conduct would remain

27

secret. "If such a scenario existed, the danger created would be unacceptable and amount to an actual conflict of interest." 22 F.3d at 772.

Defendant Stoia submitted affidavits from his three other defense attorneys, who described the subject attorney as calling the shots—and who failed to interview certain witnesses and failed to appear in court. The *Stoia* court held a possibility existed that Stoia's Sixth Amendment rights were violated and an evidentiary hearing was warranted.

Given these facts and considerations, we conclude the district court erred at the 1507 hearing in not inquiring about the conflict of interest issue. See *Brown*, 331 P.3d at 808 ("duty to inquire accrues when the court first learns of the potential conflict"). Instead of addressing this issue, that court and the Court of Appeals focused on Sola-Morales' failure to show counsel's alleged deficient performance caused prejudice under *Strickland.*

Both courts held that under *State v. Bafford*, 255 Kan. 888, 879 P.2d 613 (1994), Sola-Morales' counsel's unilateral trial continuances were acceptable and therefore caused no prejudice to his client. 255 Kan. at 895 ("The decision of whether a motion for a continuance should be filed does not require a specific consultation between the attorney and client. . . . Counsel was not required to obtain Bafford's permission prior to moving for a continuance.") (citing *State v. Ward*, 227 Kan. 663, 667, 608 P.2d 1351 [1980]). In *Ward,* the court rejected defendant's claim he was denied speedy trial rights because, among other things, he had objected to continuances requested by one of his attorneys.

The lower courts' focus is misplaced. The district court in 2010 considering Sola-Morales' 1507 motion should have not only reviewed the available facts for a conflict of interest analysis. But it should also have considered the state of the law as of March 2006 in its basic calculus. Had it included that consideration, it would have learned *Bafford*

28

was not dispositive. In 2000, 6 years after *Bafford*, this court released *State v. Hines*, 269 Kan. 698, 7 P.3d 1237 (2000). Two years later in 2002 the Court of Appeals released *State v. Arrocha*, 30 Kan. App. 2d 120, 39 P.3d 101, *rev. denied* 273 Kan. 1037 (2002).

In *Hines*, defense counsel requested a continuance of the trial scheduled for 3 days later because his grandmother had died the day before. The State did not object, but the defendant "strenuously objected" to any continuance and requested the trial proceed as scheduled, even if he had to represent himself. 269 Kan. at 700. After the judge continued the trial beyond the statutory speedy trial date to protect Hines' right to effective assistance of counsel, another judge later dismissed all charges for violation of Hines' speedy trial rights. We affirmed the dismissal, holding the continuance would not be counted against defendant.

In *Arrocha*, the Court of Appeals interpreted *Hines*, holding "[it] appears to represent a unique exception for circumstances *when defense counsel and the defendant openly disagree* about setting a trial date beyond the statutory time limit. Generally . . . defense counsel's actions or statements that result in delay bind the defendant." (Emphasis added.) *Arrocha*, 30 Kan. App. 2d at 126. The panel concluded if "the defendant and defense counsel disagree as in *Hines*, the State must beware." 30 Kan. App. 2d at 127. But the *Arrocha* panel reversed its trial court's dismissal of charges on speedy trial grounds because "Arrocha was bound by his counsel's action *when he failed to speak out against it*." (Emphasis added.) 30 Kan. App. 2d at 127.

Here, because of trial counsel's alleged conduct, Sola-Morales appeared to have lost any opportunity to timely and "strenuously object" to continuances his counsel proposed and later received. See *Hines*, 269 Kan. at 700. Sola-Morales also appeared to have lost any opportunity to "speak out against" the continuances, *e.g.*, to advise the court of his opposition. See *Arrocha*, 30 Kan. App. 2d at 127. So he arguably may also have

lost any opportunity to avail himself of the arguments, rationale, and holding in *Hines*, as corroborated in *Arrocha.* As Sola-Morales argues in his petition for review, counsel's lies—and other questionable conduct—seemingly prevented him from participating in his own defense.

These apparent losses are sufficient to warrant remand for an evidentiary hearing on the full consequences of trial counsel's reputed conflict of interest. We acknowledge that on remand the district court must first determine whether a conflict exists before moving to this next analytical step. See, *e.g.*, *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) ("But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").

But if Sola-Morales can make this conflict showing, the district court must then determine the level of any harm caused by the conflict. After opportunity for the parties to brief and argue the issue, we leave it to the district court to determine which test is applicable in this *Mickens* reservation analysis: The standards of *Cuyler* (adverse effect on counsel's representation) or *Strickland* (prejudice, *i.e.*, a reasonable probability the jury would have reached a different result absent the deficient performance). See, *e.g.*, *Cheatham*, 296 Kan. at 450 (applying adverse effect test where defendant alleged unwritten fee agreement demonstrated defense counsel's personal or business interests were contrary to client's, because the State did not argue any other test applied and because defendant benefitted from the lower standard).

In conclusion, the motion, files, and records fail to conclusively show Sola-Morales is not entitled to relief. *Fischer*, 296 Kan. 808, 822, 295 P.3d 560 (2013). Consequently, we reverse the Court of Appeals and district court and remand for an evidentiary hearing on Sola-Morales' allegations concerning not only trial counsel's

30

performance regarding Peterson but also concerning the trial continuances and counsel's alleged dishonesty about the delay.

Our holding should not be misconstrued as a determination that an attorney's conflict of interest exists or that reversible harm has been caused by any such conflict. We are merely stating that the facts presently in the record are not determinative—one way or the other—of either issue.

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded to the district court for an evidentiary hearing.

BILES, J. and MORITZ, J., not participating.