NOT DESIGNATED FOR PUBLICATION

No. 115,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALEXANDER AYERS,
*Appellee*,

v.

STATE OF KANSAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed March 17, 2017.
Affirmed.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

*Per Curiam*: The State appeals the district court's decision granting Alexander Ayers a new trial after a K.S.A. 60-1507 evidentiary hearing where it found Ayers was prejudiced by his counsel's ineffective assistance. Upon review of the record, we find there was substantial competent evidence to support the district court's decision Ayers was prejudiced by trial counsel's ineffectiveness. Therefore, we affirm.

1

On February 17, 2008, Ayers shot Officer Wade Willison following a disturbance at Ayers' mother's home. He was convicted by a jury of one count of attempted murder in the first degree and sentenced to 253 months' imprisonment. Ayers filed a direct appeal raising multiple points of error. Another panel of this court found no error and affirmed Ayers' conviction and sentence. See *State v. Ayers*, No. 101,533, 2011 WL 781635, at *1, 6 (Kan. App. 2011) (unpublished opinion).

Following his direct appeal, Ayers filed a pro se motion pursuant to K.S.A. 60-1507 alleging seven separate points of error, including claims of ineffective assistance of trial counsel. Ayers' motion alleged 15 separate points of error with respect to his trial counsel's performance. Ayers' claims can be synthesized and redefined as:  (1) failure to raise a statutory speedy trial claim; (2) jury selection error; (3) failure to object to the admission of evidence; (4) failure to object to alleged prosecutorial misconduct; (5) improper plea advice; (6) not allowing Ayers to testify in his own defense at trial; and (7) failure to pursue a defense of voluntary intoxication.

Upon review of Ayers' motion, the district court appointed counsel. Ayers' 60-1507 counsel filed an amended motion claiming Ayers' trial counsel was ineffective for failing to investigate and pursue a defense of voluntary intoxication. With all of Ayers' various claims pending, the district court granted Ayers an evidentiary hearing to determine whether his trial counsel was ineffective for (1) failing to object to the district court's jury instruction regarding intent and (2) failing to pursue a voluntary intoxication defense. The district court also found all the other claims should be denied.

After the evidentiary hearing, the district court denied Ayers' claim that his trial counsel was ineffective for failing to object to the instruction on intent, finding it untimely. However, the district court granted Ayers' claim his trial counsel was

ineffective for failing to pursue a voluntary intoxication defense. Specifically, the district court found Ayers' trial counsel was ineffective for: (1) failing to obtain the services of an expert witness; (2) failing to contact witnesses who could have testified as to Ayers' level of intoxication and drug use; (3) failing to provide evidence to support the defense of voluntary intoxication after presenting it to the jury in opening arguments; and (4) failing to request a jury instruction on voluntary intoxication.

At the evidentiary hearing, trial counsel testified he did not know why he failed to pursue a voluntary intoxication defense and believed he should have in hindsight. Trial counsel indicated he could not recall which witnesses he talked to prior to trial or whether any of them indicated Ayers had been using drugs prior to the incident. When asked about a recording of Ayers being interviewed at the Shawnee Police Department, counsel testified, "[Ayers] sounded good to me," and "[m]y memory is as I'm preparing for trial, I didn't particularly like that piece of information." Trial counsel was unsure whether the recording showed if Ayers was able to clearly articulate a timeline of the events prior to the shooting.

At Ayers' jury trial, trial counsel discussed voluntary intoxication in his opening arguments; however, he failed to call any witnesses to support the defense of voluntary intoxication and failed to argue the issue in closing arguments. Trial counsel testified that prior to trial he hired a forensic psychologist, Dr. Gerald Vandenberg, to perform an evaluation on Ayers. Dr. Vandenberg reviewed police reports, toxicology reports, and other evidence relating to the incident and met with Ayers personally. During the 60-1507 evidentiary hearing, Dr. Vandenberg indicated he did not believe Ayers could form the requisite intent to commit first-degree murder. He based his opinion on Ayers' disorganized behavior on the night of the incident as well as Ayers' "nonsensical" actions. Trial counsel acknowledged he failed to present this evidence at trial and agreed it would have undermined the existence of specific intent.

3

Ayers' testimony reflects he had been drinking alcohol and using Oxycontin and Xanax throughout the day prior to the shooting. Ayers recalled going bowling with friends that evening but did not recall leaving the bowling alley or returning to his mother's home. He indicated he "might have passed out" and could not recall certain events. He recalled arguing with his child's mother and being upset. He also recalled having a gun and magazine and arguing with his mother when she came into the house.

Ayers remembered struggling with his mother when she tried to restrain him and take away the gun. He indicated he "kind of blacked out" and did not remember firing the gun in his mother's bedroom. Ayers' next memory was being across the street from his mother's house, unsure of how he got there. He described seeing two police cruisers' headlights and trying to recall what he was doing.

Ayers remembered firing the gun in the direction of his mother's house but could not recall how many shots he fired. He stated he was unaware police were outside his mother's home or that Officer Willison had been hit. Ayers recalled wandering off into a ravine, unsure where he was going. His next recollection was waking up at the Shawnee Police Department approximately 7 hours later. Ayers did not recall any of the statements he made to law enforcement at the time of his arrest or booking. He testified he did not intend to kill Officer Willison and had not seen him when he fired the gun. Ayers testified he discussed a voluntary intoxication defense with trial counsel and was under the impression Dr. Vandenberg would testify at trial. Dr. Vandenberg was not subpoenaed to appear at the jury trial.

Ayers' friend, Katherine Stockton, also testified at the 60-1507 evidentiary hearing. Stockton's testimony corroborated Ayers' drug and alcohol use and erratic behavior prior to the shooting. Stockton testified she spoke to Ayers' counsel prior to the jury trial, discussed the information, and stated she was available and willing to testify. She never received a subpoena to appear at the jury trial.

4

At the 60-1507 evidentiary hearing, the district court found there was significant evidence supporting a voluntary intoxication defense: (1) Dr. Vandenberg's testimony; (2) Ayers' testimony; (3) Stockton's testimony; (4) a recording of a telephone conversation between Ayers and his girlfriend in which Ayers indicated he recalled very little from the night of the incident; and (5) police reports regarding Ayers' statements during booking. The district court found the evidence reflecting Ayers had consumed intoxicating substances and was impaired as a result should have been presented to the jury. Therefore, the district court concluded a jury instruction on voluntary intoxication would have been appropriate. It further determined there was a reasonable probability the outcome of trial would have been different had the available evidence been presented and argued along with an instruction on voluntary intoxication to the jury. Accordingly, the district court found, in line with the *Strickland* standards, trial counsel's performance was objectively deficient and Ayers suffered prejudice.

The district court vacated Ayers' conviction and ordered a new trial. The State filed a motion to reconsider, which the district court denied. The State timely filed its notice of appeal, claiming trial counsel's performance was not deficient and Ayers failed to show prejudice.

ANALYSIS

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether the district court's findings are supported by substantial competent evidence and whether the factual findings support the court's legal conclusions; the appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

5

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish: (1) The performance of defense counsel was deficient under the totality of the circumstances; and (2) prejudice, *i.e.*, there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

The State asserts the district court erred in finding trial counsel was ineffective. Alternatively, the State argues even if trial counsel's performance was deficient, Ayers failed to establish prejudice. We disagree with the State's argument.

Judicial scrutiny of the performance in a claim of ineffective assistance of counsel is highly deferential and requires trial counsel's consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

> "It always has been the rule that a presumption of validity attaches to a judgment of the district court until the contrary is shown. Error is never presumed, and when an appellant brings a case to this court the burden is upon him to make it affirmatively appear that the judgment below is erroneous and that his substantial rights have been prejudicially affected thereby. If he fails in sustaining such burden the judgment must be affirmed." *Phillips v. Fisher*, 205 Kan. 559, 560, 470 P.2d 761 (1970) (citing *McClelland v. Barrett*, 193 Kan. 203, 392 P.2d 951 [1964]).

The State argues the district court erred in finding trial counsel was deficient. In support of its argument, the State disputes the weight and credibility of the evidence underlying the district court's decision. However, it is not the function of this court to determine the weight of the evidence or pass on the credibility of witnesses. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). Rather, our standard of review compels this court to determine whether the district court's factual findings are supported by substantial competent evidence. *Fuller*, 303 Kan. at 485. Here, there is ample evidence in the record supporting the district court's findings.

The State asserts this court should not defer to the district court's findings because a different judge presided over Ayers' trial. The State's argument is without merit. Here, the issue is not whether the State's evidence at trial was sufficient to sustain Ayers' conviction; rather, the issue is whether Ayers' trial counsel was objectively deficient and, but for the deficiency, whether the outcome at trial would have been different. See generally *Sola-Morales*, 300 Kan. at 882. In other words, the State's evidence at trial is relevant to the issue but not controlling. The key issues are whether trial counsel was deficient when he failed to present all of the available evidence of voluntary intoxication, failed to request a jury instruction for voluntary intoxication, and failed to argue the issue to the jury in closing arguments. At a 60-1507 evidentiary hearing, the district court is the appropriate factfinder. See *Sola-Morales*, 300 Kan. at 881 (district court determines factual findings at a 60-1507 evidentiary hearing).

The State further argues a voluntary intoxication defense is inappropriate because Ayers said he contemplated suicide; therefore, the State asserts Ayers was able to form the specific intent to kill. This argument is erroneous. First, suicide and attempted first-degree murder are inherently different acts. Even if Ayers intended to kill himself, to commit attempted first-degree murder, he must have had the specific intent to kill another human being, intentionally and with premeditation. See K.S.A. 2016 Supp. 21-5301(a) (defining attempt as "any overt act toward the perpetration of a crime done by a person

7

who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime"); K.S.A. 2016 Supp. 21-5402(a)(1) (defining murder in the first degree); *State v. Maggard*, 26 Kan. App. 2d 888, 890, 995 P.2d 916 (2000) (attempt crimes require specific intent to commit the crime attempted).

Secondly, the evidence in the record shows little if any *actual intent* on Ayers' part to kill himself. Ayers' mother testified he fired the gun into the ceiling and at parked vehicles in her driveway. While he may have been behaving irrationally by arguing and physically struggling with his mother, at no point did Ayers point the gun at himself or engage in clear self-injurious behavior.

The State places considerable emphasis on Ayers' testimony he "contemplated" suicide by taking and loading the gun. The State relies on this single, cherry-picked word entirely out of context. Ayers' testimony reflected significant lapses in memory and confusion. The State fails to acknowledge this testimony. Its argument lacks substance as claims of ineffective assistance of counsel are to be judged under the totality of the circumstances. See *Sola-Morales*, 300 Kan. at 882. In other words, Ayers' testimony is relevant and should be judged under the totality of the evidence.

Next, the State argues it found "[n]o cases in Kansas where a jury has found voluntary intoxication" and therefore asserts a voluntary intoxication defense is inappropriate. This argument is misplaced because it would be nearly impossible for a case to be appealed where the jury made such a finding. As Ayers correctly points out, if a jury made a finding of voluntary intoxication it would likely result in an acquittal which the State could not appeal.

The State continues its argument, claiming trial counsel's decision not to pursue a voluntary intoxication defense was strategic. Specifically, the State cites counsel's testimony regarding a recording of Ayers' postarrest interview at the Shawnee Police

8

Department. Counsel indicated, "[Ayers] sounded good to me," and "[m]y memory is as I'm preparing for trial, I didn't particularly like that piece of information."

The State generally asserts trial counsel knew of the voluntary intoxication defense and investigated it. However, the State does not provide any citation to the record in support of this assertion, nor is the extent of counsel's investigation evident in the record. Therefore, the State has not established trial counsel made a "'thorough investigation of law and facts relevant to plausible options.'" See *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (quoting *Strickland*, 466 U.S. at 690). This seriously handicaps this court's review of trial counsel's decision because "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" See *Cheatham*, 296 Kan. at 437 (quoting *Strickland*, 466 U.S. at 690-91).

Finally, the State fails to account for the fact trial counsel began making a voluntary intoxication defense in opening arguments but apparently abandoned it. Even assuming it was a strategic decision not to present certain evidence or would have been strategic not to pursue the defense whatsoever, the State fails to explain how it was strategic to abandon the defense after discussing it in opening arguments. The district court's decision did not turn only on certain pieces of evidence counsel failed to present; rather, the district court found:  "While the Court recognizes, and [Ayers] admits, that [trial counsel's] disregard of particular evidence regarding intoxication . . . can arguably be justified as a strategic decision, [trial counsel's] disregard of the defense altogether cannot."

Here, there is considerable evidence supporting the district court's decision a voluntary intoxication defense, particularly through Dr. Vandenberg's testimony, would have made a difference. In light of this evidence, we are confident there is a reasonable probability the outcome at trial would have been different had trial counsel properly

presented the evidence and argued it to the jury. Ayers has demonstrated prejudice. See *Sprague*, 303 Kan. at 426.

Affirmed.