NOT DESIGNATED FOR PUBLICATION

No. 113,600

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHARLES L. FREED,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed September 30, 2016. Affirmed.

*Janine Cox*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL, J., and BURGESS, S.J.

*Per Curiam*: Upon remand, the district court found that one of Charles L. Freed's trial attorneys was deficient when he told Freed the State's plea offer was for 96 months in prison when it was actually an offer for 60 months. There is evidence that Freed would have accepted such an offer. But this record shows no reasonable probability that the sentencing judge would have accepted the State's recommended 60-month sentence. Freed had over 40 prior convictions, was on postrelease supervision when he committed these crimes, and was serving a new sentence from a different court when he was sentenced in this case. Because Freed cannot show us any prejudice by his counsel's

1

deficient performance, we hold he is not entitled to habeas corpus relief. We affirm the district court.

*Freed, charged in four cases, had two appointed attorneys.*

Between December 2007 and August 2008, the State charged Freed with three counts of burglary, two counts of misdemeanor theft, and one count of felony theft in three separate cases. The court appointed James T. Mamalis to represent Freed in the three cases. In October 2008, the State made a formal plea offer in the three cases. Freed rejected the State's plea offer.

On December 8, 2008, the State charged Freed in Case No. 08CR3609 with one count of burglary and one count of felony theft. This time, the district court appointed Robert A. Holubec to represent Freed.

Ultimately, in February 2009, without a plea agreement, Freed pled guilty as charged in all four cases. Freed signed an acknowledgement of rights and entry of plea, attesting he understood the consequences of his pleas and believed they were in his best interest.

*Sentencing did not go well for Freed.*

At the sentencing hearing in 2009, with Freed's permission, Mamalis represented him in all four cases. At the hearing, Freed did not object that his criminal history score was A, or that he committed the crimes while on parole or postrelease supervision.

Freed asked the district court to grant him a durational departure to probation. Alternatively, Freed requested the district court run the sentences concurrent with one another and concurrent with the 64-month Butler County sentence he was then serving.

2

He asserted he was released on parole in June 2007, began working, and "was on his way to becoming a normal member of society." According to Freed, "he was starting to get it together," and probation would aid in recovery of his drug habit by providing some accountability as he attempted to resume a productive life. Freed claimed he had a willingness to be sober but had never received adequate treatment. Finally, Freed highlighted that he had demonstrated a willingness to abide by some laws when he chose not to steal the gun.

The district court denied the departure motion, finding no substantial and compelling reasons to grant him any sort of a departure sentence. The district court noted Freed's criminal history comprised 42 prior convictions, with only 4 or 5 convictions that were not burglary, theft, or larceny, and Freed's crimes progressed from residential burglaries to churches, schools, and businesses. The district court commented that Freed had chosen a life of crime and had a considerable impact on society. The district court also found Freed's current crimes were committed while on parole, which called for his sentences to run consecutively to his paroled sentences.

The judge was specific about his concerns with Freed's criminal history:

"In a criminal history A, he has maxed out as high as he can go. I don't think this guy deserves anything but the longest and hardest sentence I can impose to, quite frankly, keep him away from society and for society to be protected from him. Albeit he does property crimes. He wreaks havoc on people and their property. He pries open doors. He pries open lockers. He pries open file cabinets. He just leaves a trail of damage and financial havoc behind him wherever he goes."

Next, the district court sought the State's sentencing recommendation. The State recommended the district court follow the sentencing guidelines for all convictions and order all sentences to run consecutively. The State also argued the district court should order Freed's sentences to run consecutive to his Butler County sentence.

In response, Freed requested the district court consider the following mitigating factors when imposing sentence: his taking responsibility for the crimes; his entering a plea without a plea agreement; and the savings to the State for pleading rather than bringing the cases to trial. Speaking on his own behalf, Freed also reiterated that he was getting his life together after his release from prison and his relapse into methamphetamine use turned him "into a completely different person." Freed expressed guilt and shame for his crimes and confirmed he had never received any substance abuse treatment.

After hearing the parties' sentencing recommendations, the district court briefly commented on Freed's crimes and criminal history:

> "[T]hese four cases on their own, standing on their own, are just incredible. The havoc you wreaked on society, the damage that you did and the property that you stole—and this might have more merit to say, well, I got off on drugs, I turned into a different person, my life spiralled [*sic*] out of control, and I'm really remorseful. That's why I just stood up and pled guilty. But then you look at your criminal history, and this is the life you have led since 1978. This isn't something unusual that happened and you lost control of your life because you celebrated one night and got hooked on methamphetamine. You have been breaking in and stealing people's property your entire lifetime, since 1978.
>     . . . .
>     "I think this is a classic example, with 42 prior convictions, a criminal history that dates clear back to 1978, you are a person that society needs to be protected from. Are you out with a gun committing person felonies or violent? No. Do your property crimes still wreak significant damage and havoc on people's lives? Absolutely."

The district court then imposed the maximum guidelines sentence for all counts, resulting in a controlling term of 174 months—34 months in prison for each burglary, 7 months in prison for each felony theft, and 12 months in jail for each misdemeanor theft. The district court also ordered the sentences to run consecutive to each other and consecutive to Freed's Butler County sentence.

4

Freed appealed his sentences, asserting the district court erred in using his criminal history for sentencing purposes and denying his motion for a departure sentence. The Kansas Supreme Court summarily affirmed Freed's sentences and dismissed his challenge to the denial of his motion for a departure sentence. *State v. Freed*, No. 102,824, 2010 WL 4394051 (Kan. 2010) (unpublished opinion).

*Freed seeks relief through K.S.A. 60-1507.*

In 2011, Freed filed a pro se K.S.A. 60-1507 motion. Freed alleged his trial counsel was ineffective for (1) rejecting a plea offer without his knowledge or consent; and (2) arguing for sentences that were contrary to the sentencing guidelines. Among other allegations, Freed alleged his trial counsel told him that the State had offered a plea bargain of "90 some months" but, rather than discussing the plea offer's terms with him, trial counsel said it was too much time for burglary and rejected the offer without his knowledge or consent. The district court denied relief.

On appeal, a panel of this court affirmed in part, reversed in part, and remanded with directions.

> "[T]his case is reversed and remanded for a determination by the district court of whether Freed's 60-1507 motion—alleging that his counsel was ineffective for rejecting the State's 90-month plea offer and then advising him to plead guilty without an agreement—raised a substantial issue requiring an evidentiary hearing." *Freed v. State*, No. 107,960, 2013 WL 2919869, at *4 (Kan. App. 2013) (unpublished opinion).

On remand, the district court held an evidentiary hearing on Freed's motion. Freed testified Mamalis did not discuss plea negotiations with him before he waived a preliminary hearing. Freed alleged, while in court, that Mamalis told him that the State wanted a consecutive sentence of 96 months but it was too much for burglary. Freed asked Mamalis if he could do better, and Mamalis indicated the plea offer was

unacceptable. According to Freed, Mamalis "never discussed any of the [plea offer's] contents" with him, though he admitted that he did not affirmatively seek an explanation of the plea offer. Freed stated he "took [Mamalis'] advice that [he] could do better" without personally seeing the written plea offer. Freed also stated: "My belief was in [Mamalis], that we could do better." Freed later claimed the plea offer was rejected without his consent. Notably, Freed did not specifically testify that he would have accepted the plea offer if given the opportunity or if Mamalis had correctly advised him of the State's sentencing recommendation.

Freed testified that he asked Holubec if he was working on a plea deal, and Holubec responded a plea bargain was not up for discussion any longer but he was going to request a downward departure sentence. Holubec never discussed any specific plea offers with Freed. Before the sentencing hearing, Holubec reviewed the departure motion with Freed.

Freed said he understood the State was not making an agreed recommendation at his sentencing and the district court could impose consecutive sentences. Freed claimed Mamalis never discussed the possible sentences with him and never told him the sentences could not be run concurrently.

Holubec testified he was appointed to represent Freed in the fourth case only. On at least one occasion, Holubec told Freed that the State had not made any plea offers. Holubec also spoke with Freed about the departure motion, and Freed approved it. Holubec had several short conversations with the prosecutor, who informed him the State would not agree to reduce the sentence in any of Freed's cases. Holubec was never made aware of the State's plea offer. Before the plea, Holubec believed concurrent sentences were possible.

6

Finally, Mamalis testified he represented Freed in the first three cases. Mamalis said he received a plea offer from the State in late October 2008 and communicated the offer to Freed when the cases came up on a jury trial docket. Mamalis recalled the plea offer involved running some of the cases consecutively. Mamalis stated by that point, he had spoken with Freed about the sentencing possibility and worst and best case scenarios. Mamalis did not consider the State's plea offer a very good offer. Mamalis explained it was his belief the October 2008 plea offer "would have panned out to 96 months" and precluded Freed from receiving probation. Mamalis testified he was going for a better plea deal and advised Freed against accepting the plea offer. Mamalis recalled that Freed rejected the plea offer, deferring to his judgment.

Mamalis explained that Freed wanted the possibility of probation and a sentence less than 96 months, and Mamalis believed "it was either accept the 96 months and be stuck with it . . . or have a chance at something better even though something worse might happen." Mamalis asserted the decision to plead without a deal was strategic. Mamalis believed the district court could run the sentences concurrent with the four cases and Freed's Butler County sentence. Mamalis also believed several mitigating factors existed that could warrant concurrent sentences.

Mamalis stated he did not think the district court would impose the maximum sentences, but he advised Freed that imposition of maximum and consecutive sentences was a possibility. Mamalis told Freed that the only way to receive a lesser incarceration term than 96 months or probation was to plead without a plea agreement. Mamalis claimed he was shocked when the sentencing judge imposed the maximum sentences for all counts and ran them consecutively.

*The court, once again, denied Freed any relief.*

When it denied Freed's motion the court made several findings of fact:

- Mamalis was appointed counsel in the first three cases;
- Holubec was appointed counsel in one case;
- In October 2008, Mamalis received a plea offer from the State;
- Before receiving the plea offer, Mamalis had advised Freed concerning the best and worst case scenarios regarding all three cases;
- Mamalis discussed the contents of the plea offer with Freed;
- Mamalis believed the plea offer stipulated the State would recommend the district court impose a 96-month prison sentence;
- In actuality, based on Freed's criminal history score of A, the plea offer stipulated the State would recommend the district court impose a 60-month prison sentence;
- Mamalis advised Freed that the plea offer was for 96 months' incarceration;
- Mamalis advised Freed to reject the plea offer;
- Freed rejected the plea offer;
- The October 2008 plea offer was the only plea offer ever received by Freed;
- After rejecting the October 2008 plea offer, the State charged Freed in a fourth case;
- Freed committed the crimes in the four cases while he was on postrelease supervision in cases out of several Kansas counties; and
- At the time of his sentencing, Freed was serving a 64-month sentence as a result of convictions in Butler County.

From these findings, the court concluded that Mamalis' performance was deficient for incorrectly advising Freed that the State's sentencing recommendation of the October 2008 plea offer was for 96 months' incarceration and prohibited him from requesting

8

probation at sentencing. The district court noted the plea offer was actually for 60 months' incarceration and allowed Freed to seek probation. The district court found Holubec provided Freed with effective representation.

But that did not mean that Freed was successful. While Freed demonstrated to the court a reasonable probability that he would have accepted the plea offer, and the plea offer would have been entered without the prosecution withdrawing it, the district court concluded that Freed failed to establish the sentencing judge would have adopted the State's sentencing recommendation or otherwise imposed lesser sentences in the three cases. In other words, Freed did not prove Mamalis' deficient performance prejudiced his case. It is from this ruling that Freed appeals.

*We examine this record for prejudice.*

We must focus our analysis on whether Freed was prejudiced by his lawyer's deficient performance because of the positions taken by the parties. Ordinarily, to prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish two things:

(1) Counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his performance was less than that guaranteed by the Sixth Amendment to the United States Constitution; and

(2) Counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 3562, 82 L. Ed. 2d 864, *reh. denied* 467 U.S. 1267 (1984); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

This is commonly referred to as the *Strickland* test. But because the State does not challenge the district court's conclusion that Mamalis' performance was deficient, we deem that portion of the test admitted.

Three questions remain. Would Freed have accepted the plea offer?  Would the State have withdrawn the plea offer?  Would the judge have imposed a lesser sentence? In our view, the answer to the first question is yes. The answer to the second and third question is no.

*Freed would have accepted the offer.*

The record contains substantial competent evidence indicating Freed would have accepted the plea offer at the time it was made if Mamalis had correctly represented its terms. According to Mamalis, Freed rejected the plea offer because he wanted a lesser sentence than 96 months and the opportunity to request probation at sentencing. But Mamalis believed "it was either accept the 96 months and be stuck with it . . . or have a chance at something better even though something worse might happen."  From this, it is reasonable to conclude Freed would have accepted the plea offer if Mamalis would have correctly advised him that the offer allowed him to request an alternative sentence. Importantly, it appears that Freed may have deferred to Mamalis' judgement of the plea offer's terms, as he expressly testified that he placed his faith in Mamalis' legal judgement. When he rejected the plea bargain, Freed clearly relied upon Mamalis' misstatement of the offer to do so. The district court correctly concluded Freed showed a reasonable probability that but for Mamalis' deficient performance, he would have accepted the plea offer.

*There is a reasonable probability that the State would not have withdrawn the offer.*

According to *Stotts v. State*, No. 110,800, 2015 WL 1402815, at *8 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. 1022 (2015), "it is the defendant's burden to demonstrate a reasonable probability that he would have accepted the plea offer *at the time that it was made—not after he knew the outcome of his trial and direct appeal.*" (Emphasis added.) The district court held, and we agree, that this burden has been met.

Under the plea offer, the State would have been obliged to recommend a 60-month prison sentence to run consecutive to Freed's Butler County sentence. Further, the plea offer specifically permitted Freed to request an alternative sentence, such as probation or concurrent sentences.

Contrary to the State's argument, the plea offer did not contain any stipulations concerning the prosecutor's discretion to make alternative sentencing recommendations if Freed committed any crimes or was charged with any new crimes between his entering the plea and his sentencing. Under Kansas law, even though Freed was later charged with multiple crimes in a fourth case, the plea agreement prohibited the prosecutor from withdrawing the plea agreement or making a recommendation different than that provided in the plea agreement.

There is, however, some evidence in the record that suggests the State was later unwilling to enter a plea agreement on the terms provided in the October 2008 plea offer. In a January 15, 2009, email to Holubec, Mamalis noted the prosecutor was insistent that any case which occurred while Freed was on bond had to run consecutive to Freed's Butler County sentence. Mamalis also indicated the prosecutor was unwilling to consolidate any of the cases. But this evidence relates to the State's willingness to entertain a plea agreement after October 2008. As this court recognized in *Stotts*, Freed

11

need only demonstrate the State would have entered the 2008 plea offer without withdrawing it at the time it made the offer.

Considering the evidence, Freed demonstrated a reasonable probability that the State would not have withdrawn the plea agreement and would have made a sentencing recommendation in accordance with the plea offer. The district court did not err in concluding Freed met his burden on this point.

*We find no reasonable probability that Freed's sentence would have been different.*

We agree with the district court on this point. Substantial competent evidence in the record demonstrates the district court would have imposed the maximum sentence on all counts, regardless of whether Freed accepted the October 2008 plea offer. At the sentencing hearing, the district court first considered Freed's motion for a departure sentence. Freed asked the district court to grant him a significant departure to probation or, in the alternative, run all counts concurrent with each other and concurrent with his Butler County sentence. Freed then argued several factors that supported a departure sentence.

The district court denied Freed's departure motion based on his extensive criminal history, which included 42 prior convictions, and the progression of his crimes from residential burglaries to commercial burglaries. The district court also specifically commented that Freed had chosen a life of crime which had a considerable impact on society. Before even hearing the State's sentencing recommendation, the district court concluded:

> "In a criminal history A, he has maxed out as high as he can go. *I don't think this guy deserves anything but the longest and hardest sentence I can impose to, quite frankly, keep him away from society and for society to be protected from him.* Albeit he does

12

property crimes. He wreaks havoc on people and their property. He pries open doors. He pries open lockers. He pries open file cabinets. He just leaves a trail of damage and financial havoc behind him wherever he goes." (Emphasis added.)

Indeed, it is clear the sentencing judge would not have been persuaded to impose a lesser sentence by the State's sentencing recommendation of 60 months in prison. At sentencing, the State did request the district court to follow the sentencing guidelines for all convictions and order all sentences to run consecutively. But Freed also had an opportunity to argue and cited several factors in favor of mitigated sentences. Nonetheless, the district court imposed the maximum sentence on all counts.

Additionally, the district court considered that Freed pled guilty and accepted responsibility for his crimes but found it unpersuasive as a basis to impose a shorter term of incarceration. Unmoved, the district court specifically stated:

"The havoc you wreaked on society, the damage that you did and the property that you stole—and this might have more merit to say, well, I got off on drugs, I turned into a different person, my life spiralled [*sic*] out of control, and I'm really remorseful. That's why I just stood up and pled guilty. But then you look at your criminal history, and this is the life you have led since 1978."

We hold the record demonstrates no reasonable probability that the sentencing judge would have accepted the State's recommended sentence as provided in the plea offer or otherwise imposed anything less than the maximum guidelines sentences. As a result, Freed simply failed to show he was prejudiced by Mamalis' failure to correctly advise him regarding the October 2008 plea offer. Accordingly, the district court did not err in denying Freed's K.S.A. 60-1507 motion.

Affirmed.

13