NOT DESIGNATED FOR PUBLICATION

No. 115,723

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KWAME O. HILL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed May 12, 2017. Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., HILL and SCHROEDER, JJ.


*Per Curiam*: Kwame O. Hill appeals the summary dismissal of his second K.S.A. 60-1507 motion. The district court summarily dismissed Hill's motion, finding it to be successive and untimely. On appeal, Hill contends that the district court should not have dismissed his motion without appointing him an attorney to represent him. He also contends that the district court should have allowed his motion to go forward on the grounds of manifest injustice and exceptional circumstances. Because we do not find

1

Hill's arguments to be persuasive, we conclude that it did not constitute error for the district court to summarily dismiss the 60-1507 motion. Thus, we affirm.

FACTS

The factual background of this case was summarized in Hill's direct appeal in *State v. Hill*, No. 106,026, 2012 WL 4677701, at *1-2 (Kan. App. 2012) (unpublished opinion):

"V.T. had known Betsy Smith since 1993 and considered Betsy to be her best friend. She went out with Betsy's son, Hill, a couple of times but was not interested in having a romantic relationship with him.

"During the evening of September 12, 2009, V.T. took Hill and his brother, Corie, to a Christian poetry event. When the event ended around midnight, V.T. took Hill and Corie back to Betsy's house. When they arrived, Corie got out of the car and went inside Betsy's house, but Hill, who was sitting in the front passenger seat, reached over and shifted the car in park, turned off the car, and removed the keys from the ignition. Hill then told V.T. that he wanted her to stay and talk to him about why she did not want to be in a relationship with him. V.T. asked for her keys back so that she could go home, but Hill refused to give them to her. V.T. then told Hill that she would have his mother tell him to return her keys. V.T. got out of the car and started walking towards Betsy's house.

"When V.T. reached the porch of Betsy's house, Hill grabbed her from behind in a bear hug. V.T. told Hill to let her go and give her the keys, but he would not. She banged her arm against the house, and Betsy and Corie came outside to see what was going on. Betsy told Hill to let V.T. go, but Hill told his mother to go back inside the house before she made things worse. Corie told his brother to "quit tripping" and went back inside the house with his mother. V.T. started to struggle against Hill, but he kept control of her and was able to pull down her pants. After Hill told V.T. to be still before she made it worse, she stopped resisting, and Hill proceeded to have sexual intercourse with her on the deck of the house. When Hill was finished, he got a blanket from the

2

garage and asked V.T. to sit and talk with him. V.T. refused, got her keys from Hill and left.

"After leaving, V.T. was scared and did not know whether to report the incident given the fact that Hill was her best friend's son. Two days after the incident, however, V.T. told Betsy what had happened, and Betsy encouraged her to call the police. On September 14, V.T. went to the hospital for a sexual assault examination. The nurse practitioner performing the examination discovered a 1 by 1 1/2 centimeter tear of V.T.'s posterior fourchette. Ultimately, V.T. told the nurse that she did not want anyone to report the incident to the police.

"After the incident, Hill tried to contact V.T. by repeatedly calling her on her phone. V.T. refused to answer her phone and told Betsy to tell Hill to stop calling her.

"On the morning of September 18, V.T. returned home after taking care of her grandmother. When V.T. got out of her car, Hill, who apparently was hiding, quickly approached V.T. and told her that he wanted to talk to her. V.T. told him that she did not want to talk to him because he had raped her. Hill got mad and told her that he did not rape her then but was going to rape her now. Hill wrestled V.T. to the ground, reached under her dress and pulled down her underwear and proceeded to rape V.T. while he covered her mouth with his hand. Hill left after he was finished.

"That same morning, V.T. returned to the hospital to undergo a second sexual assault examination. This time, V.T. requested staff at the hospital to report the rape to police. The nurse performing the sexual assault examination observed a bruise on V.T.'s upper left arm, a few abrasions on her perineum, and an 8-millimeter by 2 1/2-centimeter tear starting at V.T.'s fossa navicularis and extending to her posterior fourchette. Hill's DNA was discovered on swabs taken from inside V.T.'s vagina.

"The State charged Hill with two counts of rape. Hill's case proceeded to a trial, at which Hill represented himself. In addition to V.T.'s testimony concerning the two incidents, the State presented the testimonies of Konnie Wheeler, the nurse practitioner who performed the sexual assault examination of V.T. on September 14, 2009, and Casey Krane, the registered nurse who performed the September 18, 2009, examination.

3

Wheeler stated the 1-by 1 1/2-centimeter tear she observed on V.T.'s posterior fourchette was caused by blunt force trauma and that it was very unlikely the injury was caused by casual intercourse. Krane testified the 8-millimeter by 2 1/2-centimeter tear she observed on V.T.'s fossa navicularis and posterior fourchette was caused by blunt force trauma and would have caused V.T. a significant amount of pain. Krane also stated that, based on her experience, it was not likely this injury was caused during consensual intercourse.

"The jury found Hill guilty of both rape counts."

In his direct appeal, Hill argued that the State failed to present sufficient evidence establishing each alternative means of committing the two rapes, that the prosecutor engaged in misconduct in closing arguments, and that the district court's use of his prior convictions in calculating his sentence violated his constitutional rights. *Hill*, 2012 WL 4677701, at *1. A panel of this court rejected all of Hill's arguments and affirmed his convictions. A mandate was issued on July 22, 2013.

Subsequently, Hill filed a pro se federal habeas corpus petition that he voluntarily dismissed on May 18, 2014. *Hill v. Kansas*, No. 14-3062-SAC, 2014 WL 1745645 (D. Kan. 2014) (unpublished opinion). The following month, Hill filed a 60-1507 motion in Sedgwick County that the district court summarily dismissed in July 2014. It appears that no appeal was taken from that dismissal.

On February 23, 2015, Hill filed a second 60-1507 motion in Sedgwick County. In this motion, Hill alleged that his trial counsel was ineffective and that he was denied his right to a speedy trial. He further alleged that his appellate attorney was ineffective. On October 14, 2015, the State filed a response asserting that Hill's pro se motion was untimely and successive. On October 28, 2015, the district court summarily denied the petition and Hill timely appealed.

4

*Failure to Appoint Attorney*

The first issue that Hill presents on appeal is whether the district court violated his due process rights by failing to appoint an attorney to represent him prior to summarily dismissing his 60-1507 motion. As the Kansas Supreme Court found in *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014), a district court has three options when handling a 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]"

When the district court summarily denies a K.S.A. 60-1507 motion, the appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Sola-Morales*, 300 Kan. at 881.

Hill argues that it is unfair for a district court to consider a response from the State under the summary dismissal option. However, Kansas Supreme Court Rule 183(a)(4) (2015 Kan. Ct. R. Annot. 272), which was in effect at the time the district court dismissed Hill's motion, stated that "[w]hen a motion is filed, the clerk must serve a copy of the motion on the county or district attorney." In addition, because the State is a party to the criminal action, it is permitted to file a response. See Kansas Supreme Court Rule 133(b) (2015 Kan. Ct. R. Annot. 234).

Generally, due process of law requires a criminal defendant to be represented unless he or she waives the right to counsel. See *State v. Hemphill*, 286 Kan. 583, 596, 186 P.3d 777 (2008). In the context of a 60-1507 motion, however, this court has found that the right to counsel is not applicable if there no hearing is held. See *Miller v. State*, 28 Kan. App. 2d 39, 41-42, 13 P.3d 13 (2000). Here, the record is clear that no hearing was held. Rather, Hill filed a written motion, and the State filed a written response. The district court then reviewed the motion, files, and records to determine that Hill was not entitled to relief.

Under these circumstances, we do not find that Hill was entitled to the appointment of an attorney. Furthermore, even if we disregard the State's response, the result would be the same because we find the motion, files, and case records conclusively show that Hill is not entitled to relief. Thus, even if the district court erred in this regard, we find that any such error would be harmless.

*Untimely Motion*

Hill next contends that the district court improperly dismissed his 60-1507 motion as untimely. Although he concedes that his motion was untimely, Hill argues that relief should be granted to prevent a manifest injustice. Specifically, Hill argues that he presented a colorable claim of actual innocence by alleging that the "sexual relationship between V.T. and himself was consensual as opposed to rape." He further argues that he should be allowed to show "that V.T. was receiving pressure from her congregation at church because they disapproved" of her relationship with Hill.

K.S.A. 2016 Supp. 60-1507(f)(1)(A) requires a defendant to file a motion within 1 year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." As indicated above, the mandate in Hill's direct appeal was issued on July 22, 2013. Accordingly, Hill filed his

motion—filed on February 23, 2015—more than 1 year after the final order in his direct appeal.

A district court may extend the time limitation for filing a 60-1507 motion to prevent a manifest injustice. See K.S.A. 2016 Supp. 60-1507(f)(2). Manifest injustice must be determined from the totality of the circumstances. See *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014). The Kansas Supreme Court has held that in determining whether manifest injustice exists, a nonexclusive list of factors should be considered. These factors are: (1) whether the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the time limitation; (2) whether the merits of the movant's claims raise substantial issues of law or fact deserving the district court's consideration; and (3) whether the movant sets forth a colorable claim of actual innocence. 299 Kan. 607, Syl. ¶ 8.

We note that the Kansas Legislature amended K.S.A. 60-1507(f)(2) effective July 1, 2016. The current version of the statute—like *Vontress*—allows an exception to the statutory 1-year limitation on filing a 60-1507 motion if a movant makes a colorable claim of actual innocence. The statute now defines actual innocence as, "the prisoner [showing] it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2016 Supp. 60-1507(f)(2)(A).

Here, Hill argued in his 60-1507 motion that he was prejudiced because he was unable to develop evidence about his prior relationship with V.T. and potential evidence that V.T. was pressured to falsely accuse Hill of rape. Interestingly, Hill complains about his trial counsel when the record reflects that he represented himself at trial. Although he did have standby counsel to assist him, we find nothing in the record to indicate that Hill's standby counsel was ineffective.

7

Regardless, Hill's argument is not based on new evidence. During trial, V.T. testified that she had a prior relationship with Hill. She further testified that her sexual encounters with Hill between September 12, 2009, and September 18, 2009, were not consensual. Moreover, V.T. admitted that she previously had consensual sex with Hill. Thus, Hill already presented the nature of his relationship with V.T. to a jury.

Furthermore, Hill presented evidence regarding the possibility that V.T. was alleging rape out of shame placed upon her by her church at trial. Specifically, the following exchange occurred at trial:

> "[Hill]: Is it that you didn't want Betsy and Corie and other people to see that we was having sex, is that why you was calling this rape?

> "[V.T.]: No, I was calling it rape because it was. Betsy and Corie already knew we had sex once before so why would I be afraid of that.

> "I admitted it to Pastor, I admitted it at intercessory church. Everybody knew that I had fell short, that I had sex with you. I told you—well, I told everybody, so no, I wasn't afraid that nobody knew."

Hill also fails to demonstrate how additional evidence relating to V.T.'s prior sexual encounters, or guilt she may have felt, would make it more likely than not that a jury would have acquitted him at trial. The jury already considered the prior relationship between V.T. and Hill as well as evidence relating to V.T.'s relationship with her church. Furthermore, the evidence presented against Hill at trial was substantial. In particular, V.T. recalled both attacks in detail. Another witness testified to seeing Hill restrain V.T. on the night of the first attack. The same witness testified about the relationship between V.T. and Hill. A crime scene investigator for the Wichita Police Department also corroborated some of V.T.'s testimony about the location of the second attack.

Two medical professionals testified about the sexual assault examinations that they performed on V.T. A nurse practitioner read from a statement taken from V.T. about the first incident. The statement was consistent with V.T.'s testimony at trial. The nurse practitioner also testified about an injury V.T. had suffered in the area of her genitals that appeared to have been caused by blunt force trauma. Additionally, a nurse read from a similar report V.T. gave following the second incident that was also consistent with V.T.'s testimony at trial. The nurse further testified about several injuries V.T. suffered.

In conclusion, we do not find that Hill stated a colorable claim of actual innocence in his 60-1507 motion. Likewise, we do not find that Hill has shown that it is more likely than not that no reasonable juror would have convicted him in light of the additional evidence he wishes to present. Accordingly, we find no manifest injustice and conclude that the district court's summary dismissal of Hill's 60-1507 motion as being untimely filed was proper. Because we have determined that Hill's 60-1507 motion is time-barred, we do not reach the issue of whether it was also successive or an abuse of remedy.

Affirmed.