NOT DESIGNATED FOR PUBLICATION

No. 121,807

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SIMON S. GARCIA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed December 4, 2020.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Following the denial of his direct appeal challenging his conviction, Simon S. Garcia filed his current K.S.A. 60-1507 motion, alleging error by the district court and ineffective assistance of both trial and appellate counsel. After holding a full evidentiary hearing, the district court denied the motion, which Simon now appeals. Finding no error by the district court, we affirm.

1

*Underlying Criminal Case*

Garcia was charged with one count of trafficking contraband, marijuana or its active ingredient THC, in a correctional institution and one count of trafficking contraband, a pipe, in a correctional institution. Frederick Meier was appointed to represent Garcia.

Prior to trial, Meier filed a motion to withdraw as Garcia's counsel. At the hearing on this motion, Meier informed the district court that Garcia had requested Meier file a motion to withdraw based on a belief that communications had broken down because Garcia wished for Meier to file several pretrial motions that Meier deemed legally inappropriate. Meier candidly told the district court he had not communicated his legal opinion to Garcia on his requested motions in advance of the motions deadline that came and passed and, rather than talk with his client, he simply did not file the requested motions. Ultimately, the district court denied this motion.

Following the hearing on the motion to withdraw, the district court held three additional pretrial hearings at which Garcia was present. At the first of these hearings, Meier advised the district court that he and Garcia were "back on track." Garcia did not challenge that statement, nor did he voice any concerns with Meier's representation at any of the subsequent pretrial hearings.

The case proceeded to trial, which revealed the following facts.

On January 11, 2013, the Lyon County Jail received a tip from an inmate's girlfriend that the detention officers felt warranted investigation. Detention Officer Amy Michaels testified she and Detention Officer Kale Schankie followed up on the call by

checking the inmate's cell. The inmate whose girlfriend called in the tip was not in his cell, but three other inmates were present. When Michaels opened the door, she saw Garcia, Christopher Meza, and Marqus Moya in the cell, and there was a smell of a burnt substance.

Garcia, Meza, and Moya were removed from the cell and moved to booking by another detention officer in order to be searched. When Michaels arrived in booking, Meza and Moya were sitting in chairs and Garcia was in a holding cell. Michaels went to turn off the water to the toilet in the holding cell, but before she could accomplish this task she heard the toilet flush.

Schankie testified that as the officers walked into the cell, Meza was standing inside the cell against the wall, Moya was standing against the bed, and Garcia was standing right inside the door in front of the desk facing towards Meza. Schankie saw Garcia set something on the desk, and he also smelled a burnt odor which, based on his training and experience, he associated with marijuana. The officers removed the inmates from the cell and began to pat them down. During this pat-down Meza dropped something on the ground that looked like a ball of tissue wrapped in plastic.

Schankie then took the inmates to booking and conducted strip searches of Meza and Moya. During the strip searches he witnessed a green tint on the tops of Meza's and Moya's tongues. Schankie stated that Michaels went to turn off the water to the toilet in the holding cell where Garcia was being held. However, before the water could be shut off, Schankie saw Garcia spit something into the toilet, but he could not see what it was.

Detention Officer Caleb Rhodes assisted in patting down Moya and conducted the strip search of Garcia. Rhodes testified that Garcia complied with the search until he was asked to open his mouth. Garcia clenched his jaw shut and refused. Garcia was asked several times to open his mouth, but he just shook his head every time. He was then

placed into a holding cell, and Rhodes asked to have the water in the cell turned off. As Rhodes turned away, he heard the toilet flush and turned back around just as Garcia was dropping something from his mouth into the flushing toilet.

Detention Officer Michael Wessell corroborated the detention officers' testimonies. He stated Schankie picked up and handed him the wadded-up piece of tissue covered in plastic on the floor, which Wessell then secured inside a latex glove. Wessel photographed items found in the cell, including what appeared to be a hand rolled marijuana cigarette on the desk and ashes and a plastic smoking device on the floor. Wessel had the items tested by the Kansas Bureau of Investigation for THC, and the items tested positive.

Meza testified for the State that Garcia came into his cell and asked if Meza and Moya wanted to get high. After Meza said yes, Garcia took a piece of toilet paper out of his waist band; it was a rolled joint. Meza stated he and Garcia began to smoke the marijuana out of a pipe, but Moya did not smoke. After less than five minutes, the jail staff came into the cell.

Garcia testified in his own defense. He stated he stopped by Meza's cell to look at some pictures Meza had received the previous day and, after a couple of minutes, the detention officers entered. Garcia testified he never touched the marijuana cigarette or the pipe, but he refused to open his mouth during the strip search because he was mad and it was a "messed-up situation." He claimed he did not have anything to hide by not opening his mouth and he had candy in his mouth, which was what he spit into the toilet.

The jury found Garcia guilty of Count 1, trafficking contraband, marijuana or its active ingredient THC, in a correctional institution and not guilty of Count 2, trafficking contraband, a pipe, in a correctional institution. The district court sentenced him to 130 months in prison.

Garcia appealed his conviction and sentence, and another panel of this court affirmed. See *State v. Garcia*, No. 112,397, 2015 WL 9455582, at *9 (Kan. App. 2015) (unpublished opinion). Garcia filed a petition for review with the Kansas Supreme Court, which was denied on February 17, 2017. 305 Kan. at 1254. The mandate was issued on March 3, 2017.

*K.S.A. 60-1507 Motion and Hearing*

On November 13, 2017, Garcia filed a habeas corpus motion pursuant to K.S.A. 2019 Supp. 60-1507. The district court appointed counsel to Garcia and granted counsel leave to file an amended petition on his behalf. In that amended petition, Garcia raised the following issues: (1) The district court erred in not conducting a sufficient inquiry regarding Garcia's claim of dissatisfaction with his counsel; (2) his trial counsel, Meier, was ineffective for failing to make an adequate inquiry regarding the possible existence of exculpatory video tapes in possession of the Lyon County Jail; and (3) his direct criminal appeal counsel was ineffective for failing to brief the alleged insufficiency of the inquiry into Meier's motion to withdraw and Meier's failure to request the jail videos. Garcia believed the videos would rebut the trial testimony of the detention officers and would show Schankie could not have seen Garcia inside the cell.

The district court held an evidentiary hearing on the motion. Captain Brian Anstey, the Lyon County Detention Center Administrator, testified that in 2013, when the above events transpired, the detention center maintained video surveillance of various areas within the facility, including the "pods" or cell blocks and adjoining "day rooms." There were approximately 60 cameras placed throughout the entire facility that recorded video with no audio. One camera was mounted approximately 12 to 15 feet up on the wall in the day room area of each pod, and this single camera panned back and forth for the purpose of monitoring the inmates in the day room and common area of the pod. Because the cell doors opened into the day room, the cameras could potentially capture 1

5

to 2 feet inside the bottom tier of cells, where Garcia was, when the cell doors were open but would not capture anything towards the back of the cell or behind the wall adjacent to the cell door. Anstey did not know the rate at which each camera panned but believed the cameras panned slow enough that events occurring in one area of the pod could be missed. Anstey testified the video system recorded to three DVRs, but these DVRs and the videos saved on them were overwritten every four to eight weeks because of their storage capacity. Anstey did not know to which DVR the camera that captured Garcia's pod was connected and, thus, could not testify to exactly how quickly the video would have been overwritten. He testified that copies of video recordings could be preserved if a request to do so was made prior to the video being overwritten. Anstey could not find a written request for preservation of the video in question, and phone inquiries for the preservation of video were not documented by jail staff in 2013.

Meier, Garcia's trial counsel, also testified. Meier recalled contacting the prosecutor of Garcia's case about the video, and the prosecutor informed him the video would not have captured the interior portions of the cell. Meier then contacted Anstey, who confirmed the prosecutor's assertion. Because the video would not have shown the interior of the cell, Meier did not believe the video could be useful to the defense and did not pursue it any further. Meier discussed the video's lack of evidentiary value with Garcia prior to trial.

Meier testified he received an Inmate Communication Form (ICF) from Garcia on March 19, 2013, requesting that Meier file a motion in limine to keep out Garcia's criminal history at trial, a motion to suppress statements and evidence, and a motion to modify his bond. The ICF did not mention obtaining the jail video or other discovery matters. Meier found the requested motions to be legally inappropriate and declined to file them. Specifically, Meier believed the motions to be frivolous because the State was not intending to introduce Garcia's prior convictions; Garcia had made no incriminating statements; the seizure of the evidence was legally sound; and Meier had previously

6

made several oral motions to modify Garcia's bond, all of which were denied. As discussed, Meier did not tell Garcia why he did not file the requested motions, and, shortly after a pretrial hearing, he received an ICF from Garcia asking him to withdraw as Garcia's counsel. The district court denied the motion to withdraw, and Meier and Garcia continued to work together without issue.

Meier testified that his trial strategy was to deny Garcia had possessed the contraband and Garcia had simply walked in on Meza and Moya smoking in the cell. The defense focused on discrediting Meza, who had received a favorable plea agreement in exchange for his testimony against Garcia. Meier believed Meza had initially accepted responsibility for the marijuana but later recanted, implicated Garcia, and struck a plea deal with the State. Meier testified he intended to demonstrate Meza's culpability by drawing attention to the fact Meza and Moya had "green tongues," which is an indicator of recent marijuana use; where the marijuana and other contraband were found in the cell; and Garcia's location that made it impossible for Garcia to have possessed it.

Finally, Meier testified that during trial an inconsistency arose between Schankie's trial testimony and his preliminary hearing testimony about his position at the door. At the pretrial hearing Schankie testified he opened the door to the cell, but at trial both he and Michaels testified they opened the door. This led to a discrepancy about which officer opened the cell door, which Meier illuminated during cross-examination. Meier testified that at that point during the trial he realized that while the video would not have captured the inside of the cell, it might have shown the officers' positions at the cell door. But by the time of the trial, the video was no longer available. Nevertheless, Meier believed it was speculative the video would have captured Schankie's line of sight into the cell.

Garcia also testified at the evidentiary hearing. He recalled speaking with Meier about the jail video and Meier telling him it would not show the inside of the cell. Garcia

believed he told Meier prior to trial about the inconsistency in the officers' statements and their positions at the cell door. Garcia became dissatisfied with Meier at some point due to Garcia's belief that Meier was not communicating with him since Meier did not explain why he did not file Garcia's requested motions. Garcia admitted that following the hearing on Meier's motion to withdraw, Meier attempted to repair their communications and explained why the motions were not appropriate to file. After Meier explained his decisions on the motions, Garcia and Meier met in preparation for trial.

Garcia testified that he was dissatisfied with the district court's inquiry into the reasons for Garcia's request that Meier withdraw because he was not given an opportunity to discuss the motions Garcia believed Meier should have filed. Garcia never told his appellate counsel about his dissatisfaction with the district court's inquiry into the motion to withdraw.

After presentation of the evidence had concluded, counsel made arguments to the district court. Garcia's attorney waived the argument that appellate counsel had been ineffective. The district court denied Garcia's motion in a ruling from the bench as well as via a written journal entry. The district court found there had been an extensive cross-examination of all the witnesses by Meier, including pointing out the discrepancy as to which detention officer opened the cell door. The district court emphasized that one of the officers did not testify at the preliminary hearing, so the discrepancy regarding which officer opened the door was not known to Meier until the testimony at trial. The district court continued,

> "Who opened the door first really does not provide much evidence that indicated that the line of sight of Mr. Schankie would be somehow different or obstructed simply because somebody else opened the door. And Mr. Schankie was cross examined about that and arguments were made to the jury about what can be seen and not seen. And the jury chose to believe Mr. Schankie, even though they were advised that Ms. Michaels opened the door first. So, I don't see that as a real issue in this case."

8

Significantly, the district court determined that Anstey's testimony regarding the video established it would not have shown the incident inside the cell. As a result, the district judge concluded, "I don't think that would have been very helpful, other than to confirm whether Mr. Schankie or Ms. Michaels was correct on who opened the actual door."

The district court went on to apply the ineffective assistance of counsel standard, and concluded,

> "[T]he Court is of the opinion that the failure to request the video after being advised of what the video showed would not rise to the level of ineffective assistance of counsel. And, in fact, once the video—once it was determined at preliminary hearing or afterwards that there was—there was a difference, the video probably did not exist anyway so there would have been nothing to request."

The district court also found Meier's failure to file the requested motions was not ineffective because they were not legally appropriate. Finally, the district court found Garcia's claim that the trial court's failure to adequately inquire into his dissatisfaction with Meier was a trial error that should have been raised on direct appeal. The district court denied Garcia's motion.

Garcia now timely appeals.

DID THE DISTRICT COURT ERR IN DENYING GARCIA'S K.S.A. 60-1507 MOTION?

On appeal, Garcia claims the district court erred in denying his 60-1507 motion. Specifically, he argues Meier was ineffective for failing to obtain the video from the jail because the jury would have reached a different verdict if it had been able to view the video. Significantly, Garcia has not briefed any of the other issues he raised before the district court. Thus, we deem those other issues waived or abandoned and will only consider the jail video issue. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

9

It is well known that the district court has three options when handling a K.S.A. 2019 Supp. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The standard of review depends on which of these options a district court uses. 300 Kan. at 881. Here, the district court denied Garcia's 60-1507 motion after a full evidentiary hearing. After such a hearing, the district court must issue "findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2020 Kan. S. Ct. R. 223). We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]). Judicial scrutiny of counsel's performance in a claim of ineffective assistance is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume counsel's conduct fell within the broad range of reasonable professional

assistance. *State v. Butler*, 307 Kan. 831, 852-53, 416 P.3d 116 (2018). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning "'a probability sufficient to undermine confidence in the outcome.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Under *Strickland*, 466 U.S. at 697: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Therefore, we will begin with the second step of the inquiry: Assuming without deciding that trial counsel should have obtained the jail video, did his failure to do so prejudice Garcia?

Regarding his required prejudice showing, Garcia only asserts "had Mr. Meier obtained the video that there was a reasonable possibility that it would have reve[a]led evidence that would have led to [a] different outcome." This bare assertion is not enough to sustain Garcia's burden. Garcia alleges the video would have called into question what the officers would have been able to see upon entering the cell. However, at the time the discrepancy was discovered as to which officer opened the door—some five months after the incident—the video was already lost due to the jail's routine maintenance procedures. In fact, the video was likely already erased at the time of the pretrial hearing, which occurred approximately 11 weeks after the incident in the jail cell.

Importantly, the discrepancy as to which officer opened the door was highlighted at trial by Garcia's counsel, who argued it led to doubt as to what could have been observed in the cell. But had the video been obtained, it only would have shown which officer opened the cell door, and the jury found this discrepancy to be inconsequential. Additionally, the video would have only shown a few feet into the cell, not the officers' line of sight into the cell. Using the jury's verdict as a guide, the discrepancy in who opened the cell door was immaterial to the jury's verdict, and, therefore, Garcia fails to

11

meet his burden showing he was prejudiced by his counsel's actions. The district court's denial of Garcia's 60-1507 motion was supported by substantial competent evidence, and those findings of fact sufficiently supported its conclusions of law. There was no error.

Affirmed.