NOT DESIGNATED FOR PUBLICATION

No. 127,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANIEL L. CREGUT,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MABAN WRIGHT, judge. Submitted without oral argument. Opinion filed May 16, 2025. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Michael R. Serra*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., ARNOLD-BURGER and GARDNER, JJ.

PER CURIAM: Daniel L. Cregut appeals the district court's summary denial of his third K.S.A. 60-1507 motion as successive and untimely. The district court found Cregut failed to establish exceptional circumstances or manifest injustice, which would allow the court to consider the motion. After examining the record, we see no error in the court's analysis and therefore affirm its denial of Cregut's motion.

1

FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2015, a jury found Cregut guilty of three counts of aggravated assault, two counts each of attempted murder in the second degree and aggravated burglary, and one count each of attempted murder in the first degree, aggravated criminal threat, criminal threat, kidnapping, stalking, violation of a protective order, and criminal damage to property.

Cregut appealed his convictions, and on June 30, 2017, we upheld Cregut's convictions, except for the conviction on aggravated criminal threat, which was vacated for insufficient evidence. *State v. Cregut*, No. 115,223, 2017 WL 2834851, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 989 (2017). We summarized the underlying facts of Cregut's case in that decision:

"Around May 2012, [J.W.] and Cregut began dating. In March 2014, [J.W.] ended her relationship with Cregut. After the breakup, [J.W.] and Cregut continued to communicate and had what [J.W.] described as 'an on and off thing.' But on June 21, 2014, [J.W.] obtained a protection from abuse order against Cregut. Cregut was ordered not to have any contact with [J.W.].

"On June 29, 2014, Cregut went to [J.W.]'s apartment in Topeka, Kansas. While at the apartment, Cregut and [J.W.] got into an argument. [J.W.] left her apartment that night and stayed with a friend in Lawrence, Kansas. On June 30, 2014, [J.W.] returned to her apartment between 10 a.m. and 11 a.m. When she got into the building, she saw Cregut waiting for her in the hallway. Cregut did not have keys to the building—he later told police that he used a ladder to gain access to the building by climbing through the window in [J.W.]'s apartment.

"When [J.W.] approached Cregut, he pointed a gun at her and ordered her into her apartment. Cregut told [J.W.] that he would shoot her if she did not do as he said. [J.W.] complied and they entered her apartment. Cregut was upset that [J.W.] had not returned to her apartment the night before. While inside the apartment, Cregut and [J.W.] talked about their past relationship and what had gone wrong. Cregut told [J.W.] that he was upset that the relationship had ended.

2

"When [J.W.] tried to leave the apartment, Cregut pointed the gun at her. [J.W.] stated that she knew that if she tried to leave, Cregut would use the gun. When [J.W.] turned on the air conditioning in the apartment, Cregut told her not [to] worry about running up the bill because she would not be around to pay it. Sometime later, Cregut and [J.W.] ran out of cigarettes. Cregut told [J.W.] that they would go together to get more cigarettes.

"Cregut took his gun with him and drove to a smoke shop on Huntoon Street. [J.W.] rode in the front passenger seat. Cregut told [J.W.] that he would shoot her if she did not stay by his side. When [J.W.] and Cregut arrived at the smoke shop, they both got out of the car. When [J.W.] got out of the car, she pretended as though she was going to walk into the smoke shop. Instead, [J.W.] ran toward the BP gas station (BP) across the street. [J.W.] stated that she ran from the car because she was scared for her life. She thought if she ran to the BP, someone may be able to help her. Cregut followed [J.W.] toward the BP.

"On June 30, 2014, Bryon Snyder stopped at the BP on his lunch break to buy a drink. As Snyder walked into the BP, he heard [J.W.] screaming for help and saw her running toward the store's entrance. Snyder said [J.W.] was repeating, 'he's got a gun, he's going to kill me, help.' Snyder told [J.W.] to go inside and hide. Snyder went inside the BP and stood in front of the door. He saw Cregut approaching. Donald Hajek, the manager of the BP, called 911. Snyder applied pressure to the door in an attempt to keep Cregut from entering the store. [J.W.] ran to a back room in the store and closed the door behind her.

"Hajek went to the door that Snyder was holding shut to see if anyone was coming toward the store. He saw Cregut approaching. Cregut walked up to the door and yelled at Snyder to let him in. When Cregut tried to push the door open, Snyder held it closed and told Cregut to leave. Cregut then took his gun out of his pocket. Hajek turned and ran for the 'cage,' which is the area behind the counter surrounded by bulletproof glass. As Hajek ran for the cage, Cregut aimed his gun at Snyder's chest and shot him through the door. Snyder and Hajek later testified that after Cregut pulled his gun out of his pocket, Cregut looked at Snyder and smiled before he shot him. Cregut's bullet went through the door, through Snyder's hand, and into Snyder's chest in two places. Snyder fell to the ground, and Cregut entered the store. Cregut was screaming, 'Where's she at?'

"Just as Hajek reached the cage and locked himself in, Cregut fired a shot in Hajek's direction. Thomas Whisler, a lottery machine technician, was also in the cage

3

with Hajek. At that point, Hajek told the 911 operator that shots had been fired. Cregut looked around the store for [J.W.]. He circled back to the front of the store. Cregut then took aim at Hajek's chest behind the bulletproof glass and fired his gun. The bulletproof glass stopped the bullet. Hajek testified that Cregut 'was out to kill' and that he looked as though 'he was hunting somebody.' Cregut circled the store once again looking for [J.W.].

"After Cregut circled the store for a second time, he returned to Snyder. Cregut pointed the gun down at Snyder's face and threatened to kill him if he did not tell Cregut where [J.W.] was hiding. Snyder did not know exactly where [J.W.] was hiding, so he told Cregut that she had run out the back door. Snyder crawled out of the store and yelled for help. He saw Cregut walk out of the store and leave the scene. The entire sequence of events that happened at the BP was captured on surveillance cameras. As a result of his gunshot wound, Snyder had damage to his hand, heart, lung, and liver. His hand required surgery; his heart needed six stitches; his lung required surgery; and his liver had to be cauterized.

"When the police located Cregut in a house in the 1200 block of S.W. Washburn Avenue, he would not surrender. Detective Kent Biggs of the Topeka Police Department was brought in to negotiate with Cregut. Biggs talked to Cregut on the phone. During their conversations, Cregut commented on what had happened. Cregut told Biggs the following:

> 'I broke into her fuckin' apartment and waited for her to come home. And
> . . . what else do you need? What else is there? We went to get cigarettes
> and then she got out of the car and took off running and I chased her to
> the fuckin' station and shot some motherfucker that was standing in the
> road. You can't do shit like that . . . . I need to be locked up . . . .
> Someone does that shit deserves to be locked up and I just don't want to
> be locked up, that's all.'

Cregut also told Biggs that his intentions that day were to kill [J.W.]. Specifically, Cregut said, 'I was trying to fuckin' kill her is what the fuck I was doing' and 'if I could have found her, I would have killed her.' Cregut ultimately surrendered to the police without issue." 2017 WL 2834851, at *1-2.

Cregut filed separate K.S.A. 60-1507 motions in 2019 and 2021, which were both denied. On March 16, 2023, Cregut filed a third K.S.A. 60-1507 motion, which was

4

approximately 83 pages long. Cregut acknowledged his motion was successive (although he claimed this was his second 60-1507 motion instead of his third). But he argued it would be manifestly unjust for the court not to consider his motion because he claimed (1) his attorney's ineffectiveness in failing to argue the "attempt" and "other lesser offenses" led the jury to convict him of the "greater offenses," and (2) he could produce evidence which would exonerate him. As to the first ground, Cregut essentially claimed the district court erred in failing to instruct the jury on several lesser included offenses and his attorney erred in failing to request those instructions. And as to the second ground, he attached two affidavits to his motion. The first one, signed by Lisa Cregut, claimed that after his trial, J.W. contacted Lisa and told Lisa that she had never seen Cregut in such a rage, which J.W. knew was due to alcohol and methamphetamine in his system. It also noted that Cregut was "completely out of his mind" during the incident. The second affidavit, which was unsigned, was purportedly from J.W. It stated in part:

> ". . . Daniel L. Cregut was in so much rage and 'heat of passion,' that he was completely out of his mind when he was in an angry rage at my apartment, to the time that I ran from his car at the liquor store. I knew it had to have been the methamphetamine and the liquor in his system that caused his behavior to be out of control. . . . When we drove down to the liquor store, Danny was so high . . . ."

Cregut also claimed to present exceptional circumstances which should prevent a dismissal of his claim because he alleged his attorneys and the court blocked his attempts to bring and exhaust his claims previously.

The district court summarily denied Cregut's third K.S.A. 60-1507 motion as untimely and successive. It explained that Cregut made no arguments and provided no evidence about why he filed his motion outside the statutory time limitation and provided no evidence establishing exceptional circumstances allowing the court to consider the successive motion. As for Cregut's claim of manifest injustice, the court found Cregut's arguments were legal in nature and did not present a colorable claim of actual innocence.

5

That is, the court determined Cregut did not deny he committed the underlying conduct, but instead he challenged the way he was charged and convicted, which did not constitute manifest injustice as contemplated by K.S.A. 60-1507(f)(2). The court also found the "new evidence" Cregut attached to his motion—the affidavits—were not exculpatory because both affidavits basically stated Cregut only acted as he did based on his intoxication, but the jury heard evidence of Cregut's intoxication at trial.

This appeal follows.

REVIEW OF CREGUT'S APPELLATE CHALLENGE

A K.S.A. 60-1507 motion is a procedure through which prisoners may challenge their conviction or sentence. See *Denney v. Norwood*, 315 Kan. 163, 172, 505 P.3d 730 (2022). A person must file a K.S.A. 60-1507 motion in the sentencing court. 315 Kan. at 172. To succeed under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence either: (1) The judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack; or (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. K.S.A. 2024 Supp. 60-1507(b); Supreme Court Rule 183(g) (2025 Kan. S. Ct. R. at 238).

A movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). If it is a second or successive 60-1507 motion, the inmate must show

exceptional circumstances to avoid dismissal of the motion. *Littlejohn v. State*, 310 Kan. 439, Syl., 447 P.3d 375 (2019).

When reviewing the summary denial of a 60-1507 motion, as here, appellate courts exercise de novo review. *Wahl v. State*, 301 Kan. 610, 614, 344 P.3d 385 (2015).

*Cregut fails to show exceptional circumstances which justify consideration of his successive K.S.A. 60-1507 motion.*

The Kansas Supreme Court has noted, under K.S.A. 60-1507(c), "district courts need not consider more than one habeas motion seeking similar relief filed by the same prisoner." *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022); see also Supreme Court Rule 183(d). A movant is presumed to have listed all grounds for relief in an initial K.S.A. 60-1507 motion and, as mentioned above, "must show exceptional circumstances to justify the filing of a successive motion." 315 Kan. at 160. Exceptional circumstances are unusual events or intervening changes in the law that prevented the movant from reasonably raising the issue in the first postconviction motion. 315 Kan. at 160. Courts are to factor in whether justice would be served by considering the successive motion. *Littlejohn*, 310 Kan. at 446.

In his third K.S.A. 60-1507 motion, Cregut alleged he presented exceptional circumstances warranting a review of his motion because he contended his counsel and the "Kansas State Courts" have worked together to prevent him from bringing a claim. On appeal, Cregut does not mention this argument. Instead, he claims it would be manifestly unjust not to consider his untimely motion because he alleges he made a colorable claim of actual innocence based on his counsel's ineffectiveness and the "newly discovered evidence" he attached to his motion.

As the State correctly notes, Cregut does not establish how the affidavits were newly discovered evidence that establish exceptional circumstances. First, the State argues the information was not new and Cregut failed to establish it could not have been discovered by counsel with reasonable diligence. Second, the State contends the information contained within the affidavits would not materially alter the outcome of the proceedings. The State points out J.W. testified that Cregut was a daily drinker. But she also testified Cregut was not showing signs of intoxication before the events, and two police officers testified how Cregut did not appear to be under the influence when they contacted him. Finally, the State maintains how given the weight of the other evidence against Cregut—including his own statements to the police like he was going to kill J.W.—there is no reasonable probability the outcome of Cregut's trial would have been different if the information in the affidavit had been introduced as evidence.

In short, Cregut has not demonstrated how these are unusual events or intervening changes in the law that prevented him from reasonably raising this issue in the first postconviction motion. *Mitchell*, 315 Kan. at 160. Issues not adequately briefed are deemed waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Since Cregut has not adequately explained—either to the district court or on appeal—why the district court erred in declining to consider his third 60-1507 motion, we therefore find Cregut has not carried his burden to show the district court erred in denying his motion as successive.

*Cregut fails to show it would be manifestly unjust not to consider his untimely K.S.A. 60-1507 motion.*

A defendant has one year from when a conviction becomes final to file a motion under K.S.A. 60-1507(a). K.S.A. 2024 Supp. 60-1507(f)(1). The one-year time limitation for bringing an action under K.S.A. 60-1507(f)(1) may be extended by the district court only to prevent a manifest injustice. K.S.A. 2024 Supp. 60-1507(f)(2). That is, "'[a]

8

defendant who files a motion under K.S.A. 60-1507 outside the 1-year time limitation in K.S.A. 60-1507(f) and fails to assert manifest injustice is procedurally barred from maintaining the action.'" *State v. Roberts*, 310 Kan. 5, 13, 444 P.3d 982 (2019) (quoting *State v. Trotter*, 296 Kan. 898, Syl. ¶ 3, 295 P.3d 1039 [2013]).

K.S.A. 60-1507(f)(2) includes a definition of manifest injustice. It states that courts are "limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2024 Supp. 60-1507(f)(2)(A). The Legislature defined actual innocence to mean that the prisoner must "show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2024 Supp. 60-1507(f)(2)(A). "As the United States Supreme Court noted in *Schlup* [*v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)], an exception comparable to Kansas' 'manifest injustice' should remain 'rare' and be applied only in the 'extraordinary' case." *Beauclair v. State*, 308 Kan. 284, 302, 419 P.3d 1180 (2018).

Courts are to dismiss a motion as untimely filed if, after inspection of the motion, files, and records of the case, the court determines that the time limitations have been exceeded and dismissing the motion would not equate with manifest injustice. K.S.A. 2024 Supp. 60-1507(f)(3).

Here, Cregut argues his untimely motion should be considered because he made a colorable claim of actual innocence and has shown it would be manifestly unjust for this court not to consider the merits of the issues set out in his motion. Cregut submits that he could not reasonably foresee the consequences of voluntary intoxication. And he contends the affidavits he provided were exculpatory evidence. He contends that if the affidavits had been presented to the jury and his counsel had effectively argued the "reasonable foreseeability issues," the outcome of his trial would have been different. He

submits these reasons show it was manifestly unjust for the district court to deny his motion as untimely.

The State disagrees. It contends the district court correctly found the affidavits were not new evidence because the jury heard evidence at trial about Cregut's intoxication during the incident. It notes J.W. testified she knew Cregut "drank daily," and she would not notice his intoxication unless he drank in excess of two or three bottles of liquor. She also testified she did not believe Cregut was intoxicated the morning he kidnapped her. And the State points out one detective testified he understood Cregut had been drinking, but both that detective and another law enforcement officer testified they did not believe Cregut was intoxicated. Therefore, even given Lisa Cregut's statement and the document from J.W., the State contends the jury verdict would not have been different.

We agree. The jury heard testimony about Cregut's intoxication or potential intoxication at the time the crimes were committed. Even if jurors had the statements from Cregut, the statements simply implicate the credibility of the witnesses and their impressions of whether Cregut was intoxicated. But the issue of credibility is to be resolved by the jury and will not be reweighed on appeal. See *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011).

*Cregut's procedural arguments are unpersuasive.*

Last, Cregut makes several procedural arguments as to why he believes the district court improperly denied his motion. But none of these arguments establish the court erred in summarily denying his motion.

First, Cregut contends the district court erred by failing to make findings of fact and conclusions of law as to the merits of each issue Cregut raised. He relies on Supreme

Court Rule 183(j) for this argument, which requires the district court to make findings of fact and conclusions of law on all issues presented. But the court made findings of fact and conclusions of law on the issues when it addressed whether it could hear Cregut's untimely and successive motion. Because it found it could not hear the motion, the court was not required to consider the merits of the issues Cregut raised. That is, once it found Cregut did not establish exceptional circumstances or manifest injustice, it did not need to also consider the merits of the arguments Cregut raised as to why he was entitled to relief under K.S.A. 60-1507.

Next, Cregut claims the district court erred by relying on an unpublished opinion in making its decision, which the court apparently did not attach to its decision. He says this is impermissible under Supreme Court Rule 7.041(a) (2025 Kan. S. Ct. R. at 48). It is true that in its decision the district court included *Love v. State*, No. 123,298, 2021 WL 3234387, at *3 (Kan. App. 2021) (unpublished opinion), in a string citation that also included K.S.A. 60-1507(f)(3) for the proposition that a panel found it could not reach the merits of a movant's allegations because the movant's motion was untimely. The panel in *Love* cited to controlling authority like *Beauclair* when reaching its decision. *Love*, 2021 WL 3234387, at *3. But Cregut does not explain how this citation creates reversible error or prejudiced him.

Last, Cregut appears to have confused the summary disposition appellate procedure outlined in Supreme Court Rule 7.041 with the district court's summary denial of his motion. He claims the court erred by not following Rule 7.041, but this rule applies to appeals, not district court decisions. Rule 7.041 addresses a situation where "a controlling appellate decision is dispositive of the appeal" and so the court may summarily decide the appeal or a party may ask the appellate court to do so. The rule does not apply to the district court's decision on appeal.

All in all, Cregut has not shown manifest injustice or exceptional circumstances permitting a review of an untimely and a successive K.S.A. 60-1507 motion, so we affirm the district court's denial of his motion.

Affirmed.